IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

IRMA MARTINEZ, FELIPE MARTINEZ,
LARRY MUNN, JOSE PRIETO, and LEE
HUNT, As Personal Representative of the
Estate of ABEL PORTILLO, deceased,

    Plaintiffs,

v.                                                                                 No. 17-CV-00922 JB/JFR

CONTINENTAL TIRE THE AMERICAS,
LLC, an Ohio Limited Liability Company,

    Defendant.

### DEFENDANT CONTINENTAL TIRE THE AMERICAS, LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE ANY EVIDENCE OR ARGUMENT REGARDING SEAT BELT USE OR NON-USE, AND TO EXCLUDE DEFENDANT CTA'S BIOMECHANICAL EXPERT (Doc. 255)

Now comes Defendant, Continental Tire The Americas, LLC ("CTA"), by and through undersigned counsel, and submits its Response in Opposition ("Response") to Plaintiff's Motion *In Limine* to Exclude Any Evidence or Argument Regarding Seat Belt Use or Non-Use, and to Exclude Defendant CTA's Biomechanical Expert ("Motion")(Doc. 255). As explained below, the Motion should be denied, and this Court should rule affirmatively that evidence of seat belt use or non-use is relevant and admissible at trial in this case.

## I.    INTRODUCTION

This case arises from a single-vehicle rollover accident on February 18, 2016, following the disablement of the left rear Continental tire ("Tire at Issue"). At the time of the accident, Plaintiff Felipe Martinez was driving a 2015 Ford F-350 SD with a 6.2L gas V8 engine, with a

"curb" or empty weight of approximately 7,390 pounds[1]; while carrying approximately 1,647 pounds in tools and equipment[2]; towing a sixteen foot trailer with a trailer tongue weight of 300 pounds[3]; carrying four adult men, weighing in at approximately 834 pounds, combined[4]; and traveling at a speed of 93 miles per hour, according to the post-accident vehicle download the State Troopers performed. The vehicle belonged to Plaintiffs' employer, Trac-Work, and the Plaintiffs were returning to Texas from a jobsite in New Mexico.

CTA's biomechanical expert, Jeffrey B. Wheeler, will testify about the forces at play in rollover accidents in general and this accident in particular. Mr. Wheeler will testify that passengers who are not ejected during a rollover accident experience fewer and less severe injuries, and are more likely to survive. With respect to Plaintiff's Decedent Abel Portillo, Mr. Wheeler will testify that Mr. Portillo was, to a reasonable degree of biomechanical engineering probability, partially ejected from the truck for a period of time, struck the ground, and was briefly pinned between the ground and the truck. Finally, Mr. Wheeler will testify that the forces at play when Mr. Portillo was partially ejected from the vehicle and briefly pinned between the ground and the truck would likely kill a person. Mr. Wheeler's testimony relates directly to Plaintiffs' claim that Mr. Portillo experienced conscious pain and suffering prior to his death.

Plaintiffs' Motion asks this Court to exclude "any evidence, argument, or reference to seatbelt use or non-use" and "all testimony by" Mr. Wheeler. Motion at 1. With respect to "seat belt evidence," Plaintiffs argue that New Mexico substantive law prohibits introduction of

---

[1] See Supplemental Expert Report of Plaintiff's Expert Steven R. Christoffersen, date October 17, 2019, attached hereto as **Exhibit A**, at p.5; see also Vehicle Weight Analysis by Plaintiff's Expert Steven R. Christoffersen, attached hereto as **Exhibit B**, at p.5.
[2] **Exhibit A** at p.5. The trailer tongue weight is the amount of trailer weight that is carried by the tow vehicle at the connection between the hitch on the truck and the trailer tongue.
[3] Id.
[4] Id.;see also Wheeler Report at 5-9 (Doc. 255-1)(calculating total occupant weight as 880 pounds).

2

evidence that a person failed to use an available seat belt. With respect to Mr. Wheeler, Plaintiffs argue that his testimony only relates to Mr. Portillo's seat belt use and that he is not qualified to render a medical opinion.

While Plaintiffs' would have the Court, and ultimately, the jury, believe that CTA caused this accident by putting an unsafe tire on the road, they willfully ignore Trac-Work's systemic failure to comply with and enforce the industry standard of care and their own self-imposed standards care. Plaintiffs also willfully ignore Felipe Martinez's systemic failure to comply with obligations imposed on him by the industry standard of care and his employer. And Plaintiffs willfully ignore Mr. Portillo's failure to act with ordinary care for his own safety.

For the reasons explained below, the Court should deny Plaintiffs' Motion.

## II.     STANDARD OF REVIEW

The Motion implicates Federal Rules of Evidence 401, 403, and 702, as well as the law regarding rebuttal evidence.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and potentially prejudicial evidence." Train v. City of Albuquerque, 629 F. Supp. 2d 1243, 1247 (D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401, 402, & 403). "The standard for relevancy is particularly loose under rule 401, because '[a]ny more stringent requirement is unworkable and unrealistic.'" United States v. Ganadonegro, 854 F. Supp. 2d 1088, 1127 (D.N.M. 2012)(Browning, J.)(quoting Fed. R. Evid. 401 advisory committee's note).

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing

the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice." Walker v. Spina, 2019 WL 538458, at *16 (D.N.M. Feb. 11, 2019)(Browning, J.)(citing United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989). "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]." United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(internal quotation marks omitted). "The United States Court of Appeals for the Tenth Circuit has reminded district courts that they should be 'mindful' that 'exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly.'" Walker v. Spina, 2019 WL 538458, at *16 (D.N.M. Feb. 11, 2019)(Browning, J.)(quoting United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010)).

"Since the Supreme Court of the United States decided Daubert …, trial courts have had the responsibility to make certain that proffered experts will assist the jury in understanding the evidence and in determining the factual issues it must decide." Walker v. Spina, 2019 WL 145626, at *11 (D.N.M. Jan. 9, 2019)(Browning, J.)(quoting United States v. Gutierrez-Castro, 805 F. Supp. 2d 1218, 1224 (D.N.M. 2011)(Browning, J.)). Rule 702 governs the admissibility of expert testimony and provides that a witness, "qualified as an expert by knowledge, skill, experience, training, or education" may offer opinion testimony if the testimony: will help the "trier of fact to understand the evidence or to determine a fact in issue," "is based on sufficient facts or data," "is the product of reliable principles and methods," and those principles and methods have been reliably applied to the facts of the case. Fed. R. Evid. 702. "Courts should, under the Federal Rules of Evidence, liberally admit expert testimony," though "the trial court has broad discretion in

deciding whether to admit or exclude expert testimony[.]" Walker v. Spina, 2019 WL 145626, at *13 (D.N.M. Jan. 9, 2019)(Browning, J.)(internal citations omitted).

### III. ARGUMENT

The Court should deny Plaintiffs' Motion, in its entirety, for multiple, independently sufficient reasons. First, the New Mexico Safety Belt Use Act ("SBUA"), NMSA 1978 §§ 66-7-370 *et seq.*, does not apply to this case because Plaintiffs were operating a commercial vehicle with a gross vehicle weight ("GVW") in excess of 10,000 pounds.[5] Therefore, the prohibition on using "seat belt evidence" enshrined in NMSA 1978 § 66-7-373(A) does not apply.  Second, New Mexico cases holding that there is no duty to wear a seat belt have been overruled. See Rodriguez v. Del Sol Shopping Center Assoc., L.P., 2014-NMSC-014, ¶¶ 3, 25, 326 P.3d 465, 468, 474 (overruling "prior cases insofar as they conflict with this opinion's clarification of the appropriate duty analysis in New Mexico" and holding "courts must articulate specific policy reasons, unrelated to foreseeability considerations, when deciding whether a [party] does or does not have a duty or that an existing duty should be limited"). Third, Trac-Work and Felipe Martinez breached their duties to Mr. Portillo. Fourth, Plaintiffs' expert's proposed testimony opens the door to the issue of seat belt use. Finally, Mr. Wheeler's testimony is relevant, reliable, and helpful for the trier of fact; and he will not be offering medical opinions at trial, contrary to Plaintiffs' red-herring argument. The timeline of forces applied to Mr. Portillo's body, including when those forces would be expected to kill a person, are relevant to Plaintiffs' attempt to assert a conscious pain and suffering claim on behalf of the decedent.

    **A.    The Court Should Deny Plaintiffs' Motion to Exclude Evidence of Abel Portillo's Failure to Use a Seat Belt.**

---

[5] The parties agree that Federal courts sitting in diversity apply state substantive law and federal procedural law. Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996).

The Court should deny Plaintiffs' Motion to the extent it seeks to exclude evidence of Abel Portillo's breach of the duty to use ordinary care for one's own safety. As explained below, the SBUA does not apply to passengers in vehicles with a gross vehicle weight ("GVW") of 10,001 pounds or more; Abel Portillo had a duty of ordinary care for his own safety; Trac-Work had a duty of ordinary care to keep its employees safe; and Plaintiffs' expert's proposed testimony opens the door to Mr. Portillo's failure to use his readily available seat belt.

Therefore, the Court should deny Plaintiffs' Motion on this point and rule affirmatively that seat belt evidence is admissible at trial of this case.

### 1. The New Mexico Safety Belt Use Act Does Not Apply to This Case.

Plaintiffs correctly state that NMSA 1978 § 66-7-373(A) provides: "Failure to be secured . . . by a safety belt as required by the Safety Belt Use Act shall not in any instance constitute fault or negligence and shall not limit or apportion damages." (emphasis added). The SBUA requires "each occupant of a motor vehicle having a gross vehicle weight of ten thousand pounds or less . . . shall have a safety belt properly fastened about his body at all times . . . ." NMSA 1978 § 66-7-372(A) (emphasis added). "'Gross vehicle weight' means the weight of a loaded vehicle[.]" NMSA § 66-1-4.7(D).

If the vehicle at issue in this case had a GVW of 10,000 pounds or less, the analysis would end here. But it does not. Here, the truck itself weighed 7,390 pounds, the tools and equipment in the truck weighed approximately 1,647 pounds, the tongue weight of the trailer being towed was 300 pounds, and the occupants weighed a combined 834 pounds. All told, and as calculated by Plaintiffs' expert, Steven R. Christoffersen, P.E., the GVW for the truck at issue was 10,171 pounds – greater than the maximum threshold identified by the SBUA. **Exhibit A** at p.6 ("Subject Ford F-350 Loaded total 10171 lb").

By its terms, § 66-7-373(A) addresses only those failures to use a seat belt "as required by the Safety Belt Use Act." However, the SBUA does not apply to vehicles with a GVW in excess of 10,000 pounds. The vehicle in which Mr. Portillo was riding had a GVW in excess of 10,000 pounds. Therefore, § 66-7-373(A) does not apply, and New Mexico law does not expressly forbid introduction of a decedent's failure to use his seat belt.

### 2. Abel Portillo Had a Duty to Use Ordinary Care to Keep Himself Safe.

Because the SBUA does not apply to this case, New Mexico negligence law reverts to its default position: "Every person . . . has a duty to exercise ordinary care for the person's own safety[.]" NMRA Civ. UJI 13-1604. While New Mexico courts have previously held that there is no common law duty to wear a seat belt, see Norwest Bank New Mexico, N.A. v. Chrysler Corp., 1999-NMCA-070, ¶ 28, 981 P.2d 1215, 1223, the duty analysis in New Mexico has substantially evolved since that time.

In 2014, the New Mexico Supreme Court held that duty remains a legal question to be determined by the Court, but that the duty analysis centers on specifically articulable policy considerations. Rodriguez v. Del Sol Shopping Center Assoc., L.P., 2014-NMSC-014, ¶ 25, 326 P.3d 465, 474 (holding "courts must articulate specific policy reasons, unrelated to foreseeability considerations, when deciding whether a [party] does or does not have a duty or that an existing duty should be limited"). This case expressly overruled prior cases contemplating a different duty analysis. Id. at ¶ 3. As such, in order to escape from the standard construct of Plaintiffs' duty to exercise ordinary care for their own safety or the duty of others to exercise ordinary care for the safety of others – as would be necessary to establish a blanket no-duty rule for the use of seat belts in this case – Plaintiffs must persuade the Court that there are specific, articulable policy reasons

7

that compel such a result. Plaintiffs have not made such an argument, nor could they do so with any credibility.[6]

Whether an individual passenger or occupant of a vehicle with a GVW in excess of 10,000 pounds has a duty to wear a seat belt, in light of <u>Rodriguez v. Del Sol Shopping Center Assoc., L.P.</u> and its progeny, appears to be an issue of first impression. As the New Mexico Court of Appeals recognized in <u>Rodriguez v. Williams</u>, the exemption from a common law duty to wear seat belts runs directly contrary to the well-established public policy of comparative fault. 2015-NMCA-074, ¶ 16, 355 P.3d 25, 30.

For its part, the New Mexico State Legislature appears to have evaluated the issue and determined that passengers or occupants of vehicles with a GVW in excess of 10,000 pounds are not subject to the limitation on assessing fault or damages based on failure to wear a seat belt. In short, there is no sound basis in law for shielding the jury from evidence that Mr. Portillo chose not to buckle his seat belt; the Court should reject Plaintiffs' argument and rule affirmatively that this evidence is admissible.

### 3. Trac-Work and Felipe Martinez Failed to Follow Their Own Safety Rules and Failed to Act with Ordinary Care.

CTA will adduce evidence at trial showing that Trac-Work, decedent Abel Portillo's employer, systemically failed to comply with and enforce the industry standard of care and their

---

[6] The National Highway Transportation Safety Administration ("NHTSA") has concluded unequivocally that seat belts save lives. In fact, in 2017 alone, seat belt use saved an estimated 14,955 lives. Even though only about 10% of the population does not use a seat belt, 47% of those killed in motor vehicle crashes were not wearing their seat belts. See https://www.nhtsa.gov/risky-driving/seat-belts (last visited 1/5/2020). To exclude the seat belt evidence in this case, Plaintiffs would have to convince the Court that strong policy considerations compel a rule that encourages people and their employers to engage in activity that increases the risk of death in a vehicular accident.

own self-imposed standard of care. Mr. Portillo's inexcusable failure to use his seat belt constitutes critical evidence that Trac-Work failed to comply with its duties and obligations.

First, the F-350 was a commercial vehicle within the meaning of New Mexico law, subjecting Trac-Work to additional statutory and regulatory obligations.

A "commercial motor vehicle" is:

> . . . a self-propelled or towed vehicle, other than special mobile equipment, used on public highways in commerce to transport passengers or property when the vehicle:
> (1) is operated interstate and has a gross vehicle weight rating or gross combination weight rating, or gross vehicle weight or gross combination weigh, of . . . ten thousand one pounds or more . . . .

NMSA § 66-1-4.3(J). Here, the vehicle had a GVW of 10,001 pounds or more, a gross combination weight of approximately 12,871 pounds,[7] and operated between Texas and New Mexico; that is, the vehicle operated interstate, on public highways in commerce, to transport passengers. See Plaintiff Felipe Martinez' Answers to Defendant Continental Tire The Americas, LLC's First Set of Interrogatories, attached hereto as **Exhibit C** (passengers were traveling from Roswell, New Mexico to Amarillo, Texas); Plaintiff Larry Munn, Jr.'s Answers to Defendant Continental Tire The Americas, LLC's First Set of Interrogatories, attached hereto as **Exhibit D** (same); Plaintiff Jose Prieto Answers to Defendant's First Set of Interrogatories [sic], attached hereto as **Exhibit E** (same). The F-350 was a "commercial motor vehicle" within the meaning of the New Mexico Motor Vehicle Act.

Commercial vehicles, like the truck at issue, are subject to the New Mexico Motor Carrier Safety Act ("NMMCSA"), NMSA 1978 §§ 65-3-1 *et seq.* NMSA 1978 § 65-3-3(A)(1). The NMMCSA provides that "[w]henever a duty is prescribed for a driver or a prohibition is imposed

---

[7] **Exhibit A** at pp. 5, 9 (noting trailer, unloaded, weighed 3,000 pounds; 7,390 (truck) + 1,647 (tools) + 834 (occupants) + 3,000 (trailer) = 12,871 total pounds).

upon the driver pursuant to the provisions of the [NMMCSA], it shall be the duty of the motor carrier to require observance of such prescription or prohibition." NMSA 1978 § 65-3-3(C). The implementing regulations for NMMCSA, expressly "appl[y] to all owners, operators and drivers of commercial motor carrier vehicles." NMAC 18.2.3.2 (emphasis added).

Trac-Work had a duty, under the NMMCSA, to ensure that all safety-related parts and accessories in the commercial motor vehicle driven by Felipe Martinez and occupied by Abel Portillo were in proper working condition. NMSA 1978 § 65-3-8(A). Trac-Work also had a duty to ensure that its drivers, including Felipe Martinez, complied with all applicable traffic laws and regulations.

Trac-Work required Felipe Martinez to sign a "Driver's Pledge" stating that he would "always obey the speed limit +/- 5 MPH." Attached hereto as **Exhibit F**. It is undisputed that Felipe Martinez was driving 93 miles per hour on a public highway with a posted speed limit of 70 mph. See Crash Data Retrieval Report, at MARTINEZ 000011, attached hereto as **Exhibit G**. CTA will further show that Mr. Martinez had a history of speeding and that Trac-Work, in violation of its own policy, failed to discipline Mr. Martinez. See Texas Department of Public Safety Speeding Citation, attached hereto as **Exhibit H**; Deposition of Robert M. Favors, Person Most Qualified for Trac-Work, Inc., Jan. 29, 2019, at 145:8-20, attached hereto as **Exhibit I**.

Similarly, Trac-Work trained its drivers, including Felipe Martinez, that they were responsible for driving safely and ensuring that all passengers wore their seatbelts. See **Exhibit I** at 125:11-19; Deposition of Felipe Martinez, Nov. 6, 2018, at 33:11-35:14, 116:2-14, attached hereto as **Exhibit J**; Trac-Work Company Vehicle Program 3.3.10, attached hereto as **Exhibit K**; Trac-Work, Inc. Weekly Truck Inspection, attached hereto as **Exhibit L**. However, Mr. Martinez testified that he did not ensure all occupants were secured by seat belts on the day of this accident.

**Exhibit J** at 84:3-12. In fact, Mr. Martinez testified that he "**never**" checked" whether occupants were wearing seat belts. **Exhibit J** at 84:21-24. Indeed, Trac-Work had no formal enforcement mechanism for their seat belt requirement. **Exhibit I** at 125:20-127:16; 136:24-137:11.

While Felipe Martinez never ensured that occupants wore their seat belts, Trac-Work **never** disciplined Mr. Martinez for these failures or followed-up with him in any way. **Exhibit I** at 148:1-24.

Additionally, Trac-Work and Mr. Martinez were in a supervisory relationship with Mr. Portillo, in which Trac-Work and Mr. Martinez had the direct right and ability to control Mr. Portillo's actions. See Thompson v. Potter, 2012-NMCA-014, ¶ 27, 268 P.3d 57. This supervisory relationship constituted a special relationship, under Thompson v. Potter, giving rise to a duty to protect Mr. Portillo. Id.

Even if the supervisory relationship were not enough to create a duty, Trac-Work and Mr. Martinez took it upon themselves, in the form of company policies and supervisory obligations, to protect occupants of company vehicles and ensure that those occupants wore seat belts. See **Exhibit I** at 125:11-19; **Exhibit J** at 33:11-35:14, 116:2-14; **Exhibit K**; **Exhibit L**. This undertaking subjected Trac-Work and Mr. Martinez to an affirmative obligation to ensure that Mr. Portillo wore his seat belt. See D. Dobbs, P. Hayden, E. Bublick, *Dobbs' Law of Torts* § 412 (June 2018)(Defendant's undertaking creating a duty toward third persons).

Finally, Trac-Work and Mr. Martinez had a duty to use ordinary care to keep Mr. Portillo safe. NMRA Civ. UJI 13-1604. This duty included checking to make sure that vehicle occupants were wearing seat belts.

Evidence of Mr. Portillo's being unbelted goes directly to Trac-Work's and Mr. Martinez's pervasive pattern and practice of paying lip service to safety requirements and flouting their

11

obligations. CTA should be allowed to present this argument to the jury. Even if the Court determines that the SBUA applies to this case, which it should not, CTA should still be allowed to introduce evidence of Mr. Martinez's and Trac-Work's failure to meet their common law and self-imposed standards of care.

### 4. Plaintiffs' Expert Opens the Door to Abel Portillo's Failure to Use His Seat Belt.

Alternatively, Plaintiffs' expert's proposed testimony "opens the door" to Mr. Portillo's failure to use his seat belt. In his written report, Plaintiff's economist, Brian McDonald, Ph.D., states he will provide testimony regarding "a discussion of the well accepted, peer-reviewed economic research on the value of a statistical life." Feb. 11, 2019 McDonald Report at p. 4-5, attached hereto as **Exhibit M**. Dr. McDonald includes a footnote to this statement that reads: "See the attached Appendix A, which provides a list of published studies." Id. One of those studies is "The Value of a Statistical Life: A Critical Review of Market Estimates Throughout the World," by W. Kip Viscusi and Joseph E. Aldy, published in the *Journal of Risk and Uncertainty* in 2003. Attached as **Exhibit N**. That article states that a lower value of statistical life ("VSL") is consistent with other studies "who find that individuals who engage in risky behaviors, such as cigarette smoking and driving without seatbelts, have lower implicit values for injury than do those who do not engage in such behavior." Id. at article page no. 24 (emphasis added).

At his deposition, Dr. McDonald expressly endorsed and agreed with that statement in the Viscusi/Aldy article. See Deposition of Brian McDonald, Ph.D., Nov. 22, 2019, at 111:4-22, attached hereto as **Exhibit O**. To the extent that Dr. McDonald proposes to discuss in the abstract the methodologies that economists use to value a statistical life, CTA must be permitted to cross-examine him on the far more relevant issue of how the jury might apply these studies in this case, i.e., to the undisputed fact that the decedent here, to whose life the jury is being asked to assign a

monetary value, engaged in the needlessly risky behavior of not using his seat belt while hurtling along Highway 70 at 93 miles per hour with a trailer in tow.

Plaintiffs' own expert brings directly into play the issue of seat belt non-use with respect to the damages calculation the jury must make if it finds in favor of Mr. Portillo on liability. As such, if Dr. McDonald is permitted to testify about VSL methodologies, the Court should rule now that Plaintiffs will have opened the door to seat belt evidence.

### B. The Court Should Deny Plaintiffs' Motion to Exclude CTA's Biomechanical Expert, Jeffrey Wheeler.

The Court should deny Plaintiffs' Motion to the extent it seeks to exclude CTA's biomechanical expert, Jeffrey Wheeler, because Mr. Wheeler's testimony comports with the Rules of Evidence, directly relates to Plaintiffs' claims for damages, and is relevant, reliable, and helpful for the trier of fact because it will assist the jury in evaluating Plaintiffs' claim that Mr. Portillo experienced conscious pain and suffering. However, even if the Court were to exclude seat belt evidence as described above, the Court should still deny Plaintiffs' Motion with respect to Mr. Wheeler because none of Mr. Wheeler's testimony requires him to say that Mr. Portillo was not wearing his seat belt. To the extent the Court intends to hear argument on this Motion, CTA requests that Mr. Wheeler be allowed to testify at any such hearing.

### 1. Mr. Wheeler's Testimony Comports with the Rules of Evidence and Substantive New Mexico Law.

As an initial matter, Mr. Wheeler's proposed testimony comports with the Rules of Evidence and substantive New Mexico law. As discussed above, the SBUA does not apply to this case. Accordingly, all of Plaintiffs' argument that Mr. Wheeler's testimony somehow runs afoul of the SBUA misses the mark. The Court should deny Plaintiffs' Motion on this basis.

Additionally, Plaintiffs state "it is unlikely that [Mr. Wheeler] would even be qualified to render a medical diagnosis of whether Plaintiff's current medical issues are related to the crash because he is not a medical doctor." Motion at 8. CTA agrees with the statement. At no time has Mr. Wheeler rendered a medical diagnosis as described by Plaintiffs. Nor will he.

### 2. Mr. Wheeler's Testimony is Relevant to Plaintiffs' Claim for Conscious Pain and Suffering.

Here, Plaintiffs will attempt to argue that Mr. Portillo experienced some amount of compensable conscious pain and suffering.[8] CTA will present testimony from the Medical Examiner responsible for Mr. Portillo's autopsy that will describe Mr. Portillo's fatal injuries. As a biomechanical expert, Mr. Wheeler will testify about the forces that impacted Mr. Portillo and how Mr. Portillo's body moved and was impacted during the accident. For example, Mr. Wheeler will testify that Mr. Portillo was "likely ejected between [quarter turn] 4 and 5," that his "injury pattern suggests crushing trauma associated with contact between the vehicle and ground during the ejection sequence," and that his "skeletal fractures specifically suggest [Mr. Portillo's] head and upper trunk were crushed between the vehicle and the ground." (Doc. 255-1 at 8).

Biomechanics is "the science concerned with the action of forces, internal and external, on the living body." Finn v. BNSF Ry. Co., 2013 WL 462057, at *2 (D. Wyo. Feb. 6, 2013)(citing STEDMAN'S MEDICAL DICTIONARY (25th Ed. 1989)). "Biomechanical experts have extensive knowledge about how human bodies move when forces are applied to them and thus may provide testimony as to how vehicle occupants move and are impacted in vehicular accidents." Id. (quoting Ingraham v. KIA Motors America, Inc., 2007 WL 2028940, at n.12 (W.D.

---

[8] The pattern jury instruction in a wrongful death specifically contemplates "[t]he pain and suffering experienced by _____ (*name of decedent*) between the time of injury and death[.]" NMRA Civ. UJI 13-1830.

Okla. 2007)). Biomechanical testimony "is not to determine a party's medical condition, but rather, to determine whether a condition or conditions are consistent with the types of forces in an accident." Id.

Mr. Wheeler's analysis of the forces applied to Mr. Portillo and the sequence of events based on physical regression is within Mr. Wheeler's scope of expertise. Additionally, Mr. Wheeler can testify regarding which impacts or forces, experienced at what time, would likely have killed a person. This is not the same as testifying to Mr. Portillo's cause of death, but it does help the jury understand the movements of Mr. Portillo relative to the vehicle as well as the timing and value of forces affecting Mr. Portillo, so as to quantify how long Mr. Portillo was alive during the rollover accident. This, along with evidence presented by the Medical Examiner, assists the jury in evaluating any conscious pain and suffering.

The Court should not exclude Mr. Wheeler just because the jury might infer a fact that Plaintiffs' want to keep secret, namely that the decedent showed gross disregard for his own safety. Plaintiffs cite no authority supporting such a result.

Accordingly, the Court should deny Plaintiffs' Motion to exclude Mr. Wheeler's testimony. His testimony will aid the fact finder in determining a fact in consequence: how long Mr. Portillo may have survived the accident, and how much, if any, pain and suffering Mr. Portillo could be expected to have experienced.

## IV. CONCLUSION

The Court should deny Plaintiffs' Motion in its entirety. First, the New Mexico Safety Belt Use Act expressly does not apply to vehicles with a gross vehicle weight exceeding 10,000 pounds, and the vehicle in this case had a gross vehicle weight of at least 10,171 pounds. Having concluded that the SBUA does not apply, the Court should conclude that Mr. Portillo had a duty to exercise

15

ordinary care for his own safety. Apart from Mr. Portillo's duties, and even if the Court determines that the SBUA applies in this case, the Court should allow CTA to introduce evidence of Trac-Work's and Felipe Martinez's systemic failures to follow their own safety rules and requirements—duties that Trac-Work and Felipe Martinez voluntarily assumed and undertook, in addition to their corresponding duties of ordinary care. Finally, Plaintiffs' proposed expert testimony from their hired economist opens the door to Mr. Portillo's seat belt use, and CTA should be allowed to cross-examine him with facts on this front.

With respect to Mr. Wheeler, the Court should deny Plaintiffs' Motion because the SBUA does not apply. Even if the Court does not so conclude, the Court should still deny Plaintiffs' Motion because Mr. Wheeler's testimony will aid the jury in determining Mr. Portillo's conscious pain and suffering, if any. To the extent the Court intends to hear argument on this Motion, CTA requests that Mr. Wheeler be allowed to testify at any such hearing.

For these reasons, Defendant Continental Tire The Americas, LLC, respectfully requests that the Court entirely deny Plaintiffs' Motion *In Limine* to Exclude Any Evidence or Argument Regarding Seat Belt Use or Non-Use and to Exclude Defendant CTA's Biomechanical Expert (Doc. 255), filed December 23, 2019. In addition, the Court should rule affirmatively that CTA is entitled to admit evidence and present argument concerning the fact that the decedent, Abel Portillo, was not wearing his seat belt at the time of the accident.

HARTLINE BARGER LLP

By: */s/ Donald A. DeCandia*
Donald A. DeCandia
141 Palace Ave., Garden Suite #2
Santa Fe, New Mexico 87501
(505) 336-5291
ddecandia@hartlinebarger.com

Mary E. Jones
500 Marquette Ave. NW, Suite 770
Albuquerque, New Mexico 87102
(505) 336-5305
mjones@hartlinebarger.com

-and-

YOKA & SMITH, LLP
Walter M. Yoka
Anthony F. Latiolait
Shauna Avrith
Bret Henry
445 South Figueroa Street, 38th Floor
Los Angeles, CA 90017
(213) 427-2300
wyoka@yokasmith.com
alatiolait@yokasmith.com
savrith@yokasmith.com
bhnery@yokasmith.com

*Attorneys for Defendant Continental Tire the Americas, LLC*

I HEREBY CERTIFY that on the 6th day of January, 2020, I filed the foregoing electronically through the CM/ECF system, which caused the following counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

*Attorneys for Plaintiffs:*
Randi McGinn
Michael E. Sievers
Mish Miera-Rosete
Email: randi@mcginnlaw.com
mike@mcginnlaw.com
mish@mcginnlaw.com

Mack Whittenburg
Email: mack.whittenburg@gmail.com

Broadus A. Spivey
Email: bas@spivey-law.com

*Attorneys for Plaintiff Prieto*
Steven K. Sanders
Email: stevenksanders@aol.com

HARTLINE BARGER LLP

By:   */s/ Donald A. DeCandia*
Donald A. DeCandia