# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

IRMA MARTINEZ, FELIPE MARTINEZ,
LARRY MUNN, JOSE PRIETO, and
LEE HUNT, *as personal representative
of the estate of Abel Portillo*, *deceased*,

        Plaintiffs,

vs.                                            Case No. 1:17-cv-00922-KWR-JFR

CONTINENTAL TIRE THE AMERICAS,
LLC, An Ohio Limited Liability Company

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Defendant Continental Tire the Americas, LLC's Motion for Partial Summary Judgment on the Issue of Lost Earnings and Lost Earning Capacity, filed on February 28, 2020 (**Doc. 316**), and Plaintiffs' Motion in *Limine* to Exclude Evidence, Argument, or Reference of the Citizenship or Immigration Status of Plaintiffs' decedent Abel Portillo, filed on February 28, 2020 (**Doc. 325**). Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendant's motion is not well-taken and, therefore, is **DENIED.** However, the Court finds that Plaintiffs' motion in limine is well-taken in part and, therefore, is **GRANTED IN PART.**

### BACKGROUND

This case arises out of a single-vehicle accident allegedly resulting from the failure or blowout of a left rear Continental tire. Defendant is the tire manufacturer. Several plaintiffs were

injured in the incident. Abel Portillo died, and Plaintiff Lee Hunt is the personal representative of his estate. Plaintiffs allege that manufacturing and design defects caused the tire blowout.

On August 2, 2017, Plaintiffs filed a complaint for wrongful death and personal injuries. In April 2020, Plaintiffs agreed to the dismissal of Counts III, IV, and V. Therefore, it appears that the following claims remain:

    Count I:    Strict Products Liability

    Count II:    Negligence (causing death and injury)

    Count VI:    Loss of Consortium (as to Plaintiff Irma Martinez)

In this motion, Defendant seeks to prevent Plaintiff Lee Hunt from collecting any damages for lost earnings or lost earning capacities, because decedent Abel Portillo was apparently an undocumented immigrant.

Plaintiff Lee Hunt opposes summary judgment, asserting that New Mexico state law applies, which allows a plaintiff to recover damages for lost earning capacity regardless of the decedent's immigration status.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). As the Tenth Circuit has explained, "mere assertions and conjecture are not enough to survive summary judgment." *York v. AT&T*, 95 F.3d 948, 955 (10th Cir. 1996). To avoid summary judgment, a party "must produce specific facts

showing that there remains a genuine issue for trial and evidence significantly probative as to any [material] fact claimed to be disputed." *Branson v. Price River Coal Co.*, 853 F.2d 768, 771-72 (10th Cir. 1988) (quotation marks and citations omitted).

"A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1306 (10th Cir. 2017) (quotation marks and citation omitted).

**UNDISPUTED FACTS**

Decedent Abel Portillo was born in Chihuahua, Mexico and was a citizen of Mexico. He was not a citizen of the United States.

Mr. Portillo met his wife, Plaintiff Irma Martinez, in the United States in 1996, at which time he had already been living in the United States and had been employed in the United States. Mr. Portillo worked in the United States for at least 20 years until his death. He earned wages from Rail Labor Providers, a company that contracted with Trac-work, Inc, from 2014 to 2016. Decedent had federal income tax withheld from his paycheck and paid his social security and medicare taxes.

Plaintiff Irma Martinez did not know when Mr. Portillo came to the United States, and does not know whether he was a citizen, but had assumed he was legally in this country. However, Defendant has undisputedly shown that decedent was an undocumented immigrant. Plaintiff Lee Hunt admitted that he was not lawfully authorized to work in the United States and falsely represented that he was a citizen of the United States. Decedent also submitted an unverifiable permanent resident card and social security card. Although Plaintiffs now attempt to dispute these admissions, the Court finds that her prior admissions in this case undisputed and she has not

provided contrary evidence in the record. Irma Martinez's testimony that she did not know he was not a citizen does rebut Defendant's evidence in the summary judgment record.

Mr. Portillo and Irma Martinez were married by common-law marriage in Texas since 2000. Plaintiff Irma Martinez is a United States citizen. Mr. Portillo did not have a criminal record in Texas, and there is no record he had a criminal record anywhere else.

Plaintiff Lee Hunt's expert, Brian McDonald, relied on the United States wage scale to arrive at his opinions regarding decedent's lost earnings and lost earning capacity. Plaintiff has produced no evidence regarding lost earnings or lost earning capacity on the Mexican wage scale.

## DISCUSSION

**I.     Defendant's Partial Motion for Summary Judgment (Doc. 316).**

    **A.     Wrongful Death Damages.**

As part of a wrongful death claim, a plaintiff may recover under New Mexico law damages for the decedents' lost earnings or lost earning capacity. NM UJI 13-1830 (instructing jury to consider lost earning capacity in arriving at damages figure); N.M.S.A. 1978 § 41-2-1 (wrongful death statute). "The purpose of the Act is to compensate the statutory beneficiaries and to deter negligent conduct. The statutory language instructs the jury to award fair and just damages, and allows the jury to consider the pecuniary injury to the decedent's statutory beneficiaries as an element of the worth of the life of the deceased. § 41–2–3. The presence or absence of pecuniary damages is a factor to be considered in arriving at a monetary figure for the value of the deceased's life." *Romero v. Byers*, 1994-NMSC-031, ¶ 17, 117 N.M. 422, 427, 872 P.2d 840, 845 (internal citations omitted). The value of future lost earnings must be "reasonably certain to be lost in the future." NM UJI 13-1803; *see also Mitchell v. Lovato,* 97 N.M. 425, 640 P.2d 925, 927 (N.M.1982) (damages are not "reasonably certain" if they are inherently speculative).

## B. Defendant's Policy Argument.

Defendant argues that Plaintiff Lee Hunt should not be allowed to recover damages for decedent's future lost earning capacity, because it would be illegal for him to work in the United States under federal law. Defendant appears to make a policy argument – that the Court should not reward conduct unlawful under a Federal statute. The Court disagrees.

Defendant points to the Immigration Reform and Control Act of 1986 ("IRCA"). The IRCA is a federal statutory scheme "prohibiting the employment of illegal aliens in the United States." *Hoffman Plastic Compounds, Inc. v. N.L.R.B.,* 535 U.S. 137, 147, 122 S.Ct. 1275, 152 L.Ed.2d 271 (2002). IRCA is "focused foremost on the employer," *Bollinger Shipyards, Inc. v. Director, Office of Worker's Comp. Programs,* 604 F.3d 864, 874 (5th Cir.2010), as employers must examine specified documents for all newly-hired workers to verify their identity and eligibility for work in the United States. 8 U.S.C. § 1324a(b). Employers who hire employees who fail to provide the required documentation are subject to civil fines and criminal prosecution. 8 U.S.C. §§ 1324a(a)(1), 1324a(f)(1). Additionally, a potential employee who tenders false or fraudulent documents for purposes of obtaining employment is subject to fines and criminal prosecution, but the statute "provid[es] nothing regarding *civil* effects." *Bollinger Shipyards,* 604 F.3d at 874.

However, because this is a diversity case based on New Mexico law, this Court must ascertain and apply New Mexico law. In doing so, the Court must either follow the decisions of the New Mexico Supreme Court or attempt to predict what the New Mexico Supreme Court would do. *Coll v. First Am. Title Ins. Co.,* 642 F.3d 876, 886 (10th Cir. 2011); *Federated Serv. Ins. Co. v. Martinez*, 529 F. App'x 954, 957 (10th Cir. 2013) (if no controlling state supreme court case

exists, district court must predict how such court would rule based on intermediate appellate decisions, decisions of other states, federal decisions, and general weight and trend of authority).

The Court sees no reason why in a diversity case involving the New Mexico Wrongful Death Act it should apply federal policy that may or may not be relevant over clear New Mexico policy favoring compensation.  As explained below, the Court predicts that the New Mexico Supreme Court would hold that federal policy would not require a court to deny compensatory damages for lost earnings under state tort law.

New Mexico appellate cases are clear that the estates of deceased undocumented immigrants may recover compensatory damages even though the decedents were in the country illegally.  "[T]he word 'person' in the Wrongful Death Act includes a nonresident alien who is present illegally in the State of New Mexico…The rule is established that an alien, who is a citizen of a friendly country, and who entered the United States illegally, is entitled to maintain an action for personal injuries." *Torres v. Sierra*, 1976-NMCA-064, ¶¶ 12-14, 89 N.M. 441, 444, 553 P.2d 721, 724, *cert. denied*, *Sierra v. Torres*, 90 N.M. 8, 558 P.2d 620 (1976); *see also Perez v. Health & Soc. Servs.*, 1977-NMCA-140, ¶ 7, 91 N.M. 334, 336, 573 P.2d 689, 691("We have held that the word "person" in the Wrongful Death Act included a non-resident alien who was present illegally in the state; that an alien, who is a citizen of a friendly country, and who entered the United States illegally, was entitled to maintain an action for personal injuries; that no restrictions were placed on aliens in the Wrongful Death Act ***and that this fact represents the public policy of this State***.") (emphasis added).

Denying compensation to undocumented immigrants for lost earnings under the Wrongful Death act would not further the purpose of the act, which is to compensate statutory beneficiaries and deter negligent conduct.   *Romero v. Byers*, 1994-NMSC-031, ¶ 17, 117 N.M. 422, 427, 872

P.2d 840, 845 ("The purpose of the Act is to compensate the statutory beneficiaries and to deter negligent conduct.").

Moreover, the Tenth Circuit, analyzing New Mexico state law, concluded that illegality is not a defense to a wrongful death claim by the estate of an illegal alien killed in an auto accident. *Torrez v. State Farm Mutual Automobile Ins. Co.,* 705 F.2d 1192, 1202–03 (10th Cir.1982) ("In New Mexico, as well as other jurisdictions, wrongful death statutes allow a claim to be made on behalf of an illegal alien."), *citing Torres v. Sierra,* 89 N.M. 441, 553 P.2d 721 (1976).

The Court predicts that despite the illegality of undocumented immigrants working in the United States, the New Mexico Supreme Court would allow lost earning wages for estates of deceased undocumented immigrants. Even if the Court were to apply Federal public policy to a diversity case involving state claims, it would not further the purpose of the IRCA to bar recovery under these circumstances. Here, there is no employment relationship to regulate or employer to punish for hiring an undocumented immigrant. Moreover, allowing compensation in a wrongful death action would not encourage future violations of the IRCA.

### C. Defendant's Remaining Arguments are unpersuasive.

Defendant argues that the IRCA, enacted in 1986, is intervening law and the New Mexico Supreme Court would no longer follow earlier cases. The Court disagrees and finds persuasive the general weight and trend of authority that generally allows estates of deceased undocumented immigrants to collect damages for lost earning capacity. *Ortiz v. Cooper Tire & Rubber Co.*, No. CIV-13-32-D, 2015 WL 1498713, at *6 (W.D. Okla. Mar. 31, 2015) ("[T]he Court is persuaded that Oklahoma would join the jurisdictions that have declined to erect a legal bar to recovery by an undocumented alien of compensatory damages caused by a tortfeasor, but would treat the issue as a matter of factual proof."); *Vargas v. Kiewit Louisiana Co.*, No. CIV.A. H-09-2521, 2012 WL

7

2952171, at *5 (S.D. Tex. July 18, 2012) (rejecting illegality argument as bar to recovery of lost earning capacity in tort action); *Tyson Foods, Inc. v. Guzman,* 116 S.W.3d 233, 247 (Tex.App.2003) ("Texas law does not require citizenship or the possession of immigration work authorization permits as a prerequisite to recovering damages for lost earning capacity. Therefore, the fact that [the plaintiff] was not a United States citizen at the time of the accident has no bearing on his ability to recover damages for lost earning capacity."); *see also Grocers Supply, Inc. v. Cabello,* 390 S.W.3d 707, 721 (Tex.App.2012) (*Hoffman* does not apply to personal injury damages); *Hocza v. City of New York*, No. 06 CIV. 3340, 2009 WL 124701, at *1–2 (S.D.N.Y. Jan. 20, 2009) ("a plaintiff's status as an illegal alien, in and of itself, cannot be used to rebut a claim for future lost earnings."), *quoting Klapa v. O & Y Liberty Plaza Co.,* 168 Misc.2d 911, 645 N.Y.S.2d 281, 282 (N.Y.Sup.1996); *Madeira v. Affordable Housing Foundation, Inc.,* 469 F.3d 219, 228, 249 (2d Cir.2006) (holding where employer, not undocumented alien, violated IRCA by arranging employment and where jury instructed to consider worker's removability in assessing damages, New York law did not conflict with IRCA policy in allowing recovery "for some measure of lost earnings at United States pay rates"); *Bordejo v. Exclusive Builders Inc.,* 865 F.Supp.2d 617, 624–25, 2011 WL 3667570, at *7 (M.D.Pa.2011) (finding Pennsylvania's stance toward recovery of workers' compensation to be persuasive regarding recovery for personal injury and predicting that "the Pennsylvania Supreme Court would not preclude [Bordejo's] claims for lost earnings as a matter of law"); *Kalyta v. Versa Prods., Inc.,* No. 07–1333(MLC), 2011 WL 996168, at *3 (D.N.J. March 17, 2011) (finding workers' compensation system comparable to personal injury and holding "[n]either IRCA nor New Jersey law prohibits lost wages damages for undocumented workers in the personal injury tort context"); *Mischalski v. Ford Motor Co.*, 935 F. Supp. 203, 204–05 (E.D.N.Y. 1996) (collecting cases) ("plaintiff's illegal alien status is, by itself,

irrelevant, and cannot be used to prevent plaintiff from recovering compensatory damages in this case."). These cases are consistent with the New Mexico policy described above of treating undocumented immigrants as "persons" under the Wrongful Death act entitled to compensation.

Moreover, awarding damages for lost earning capacity would not violate any policy of the IRCA and does not encourage future violations of immigration law. *See, e.g., Vargas v. Kiewit Louisiana Co.,* No. CIV.A. H-09-2521, 2012 WL 2952171, at *5 (S.D. Tex. July 18, 2012) ("this Court does not find the same danger of motivating immigration policy violations to be present in this case, as immigrants will not be motivated to violate IRCA in order to obtain additional U.S. wages after suffering fatal injuries. Rather, the Court's ruling today counteracts another competing motivation—that of third-parties to exercise less caution and endanger the lives of any undocumented immigrants."). Here, we are not dealing with an employer-employee relationship, which was the central focus of the IRCA. There is no inherent unfairness in holding a tortfeasor liable for their tortious actions or compensating a deceased undocumented worker. Rather, it would be a windfall to the tortfeasor to bar compensatory damages for reasonably certain future lost earnings of a deceased undocumented immigrant.

Defendant also points to two cases it alleges the New Mexico Supreme Court would follow to bar compensation for lost earnings. *See Gonzalez v. Performance Painting, Inc.*, 2013-NMSC-021, ¶ 25, 303 P.3d 802, 807 *and Hoffman Plastic Compounds, Inc. v. NLRB,* 535 U.S. 137, 122 S.Ct. 1275, 152 L.Ed.2d 271 (2002). The Court disagrees. *Gonzalez* involved the alleged unfairness to an employer who was forced to pay for increased workers compensation benefits but could not mitigate the cost by hiring the undocumented worker back because of the IRCA. *Gonzalez*, 2013 NMSC-021, at ¶ 25. The NMSC ultimately held that the worker was entitled to the increased benefits despite his undocumented status. Those facts are simply not applicable here

9

– there is no employer here faced with paying for increased benefits or insurance rates without the ability to mitigate them by hiring the undocumented worker back.

*Hoffman Plastic* involved a conflict between Federal labor and immigration law. 535 U.S. 137. An undocumented immigrant was discharged by an employer for union activities. Although this may have been a violation of labor law, the United States Supreme Court concluded that the undocumented immigrant was not entitled to backpay. The United States Supreme Court noted that allowing an undocumented immigrant to recover backpay for wrongful discharge would "encourage the successful evasion of apprehension by immigration authorities, condone prior violations of the immigration laws, and encourage future violations," *id.* at 151, 122 S.Ct. 1275. None of those concerns are present here as to the decedent.

> **D.     Plaintiffs may present evidence on American wages**.

Defendant alternatively requests that the Court bar Plaintiff from presenting evidence of American wages for the purpose of calculating decedent's lost earning capacity. Defendant cites to *Cruz v. Bridgestone/Firestone N. Am. Tire, LLC*, No. CIV 06-538 BB/DJS, 2008 WL 5598439, at *5 (D.N.M. Aug. 29, 2008). The Court finds that this case is not factually on point, for the reasons stated by Plaintiffs. **Doc. 342 at 15.** The plaintiffs in *Cruz* did not appear to have lived or worked in the United States, and it was speculative to award them compensation for American wages.

Here, however, decedent had lived and worked in the United States for at least 20 years prior to his death. **Doc. 342 at 3, UMF 1.** This is strong evidence, and a reasonable jury could conclude that compensation for lost American earnings is appropriate. Although decedent was a citizen of Mexico, there is nothing in the record to indicate when he last lived or worked in Mexico.

It is unclear when, if ever, he worked in Mexico. Therefore, it would be speculative to apply Mexican wages to this case.

New Mexico requires the value of lost earnings to be "reasonably certain" to be lost in the future. NM UJI 13-1803. Plaintiff has presented strong, non-speculative evidence of decedent's earning capacity, which includes over a twenty-year employment in the United States.

### E. No preemption of New Mexico tort law or Wrongful Death statute.

Defendant argues that the IRCA preempts New Mexico state law allowing the personal representative of deceased undocumented immigrants to collecting compensatory damages for lost earning capacity. **Doc. 353 at 7.** The Supremacy Clause provides that the laws of the United States "shall be the supreme Law of the Land[,] ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. "[F]ederal law preempts contrary state enactments." *Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 765 (10th Cir. 2010). "Preemption can be either express or implied. State laws are expressly preempted when they fall within the scope of a federal provision explicitly precluding state action. Alternatively, state laws may be impliedly preempted either as a result of conflict or field preemption." *Id.* (internal citations omitted).

Defendant has the burden of establishing federal preemption of state tort law. *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238 at 255, 104 S. Ct. 615, 624–25, 78 L. Ed. 2d 443 (1984) (imposing burden of establishing Congress's preemptive intent on party challenging application of traditional state tort law), *cited in Mount Olivet Cemetery Ass'n v. Salt Lake City*, 164 F.3d 480, 489 n.4 (10th Cir. 1998) ("The party claiming preemption bears the burden of showing with specificity that Congress intended to preempt state law."); *Cook v. Rockwell Int'l Corp.*, 618 F.3d

1127, 1143 (10th Cir. 2010) ("Because Defendants advocate preemption, they bear the burden of showing that federal and state law conflict.").

The IRCA expressly preempts "any State or local law imposing civil or criminal *sanctions* (other than through licensing and similar laws) upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens." 8 U.S.C. § 1324a(h)(2) (emphasis added), *quoted in Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 765 (10th Cir. 2010). The IRCA does not expressly preempt the New Mexico Wrongful Death statute or state tort law outside of the employer-employee relationship.

There is also nothing to indicate that Congress intended to preempt the field of state tort law as to undocumented immigrants. *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 240 (2d Cir. 2006). "Congress's intent to preempt state law may be implied where it has designed a pervasive scheme of regulation that leaves no room for the state to supplement, or where it legislates in 'a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state law on the same subject.' " *Madeira*, 469 F.3d at 240, *quoting in part English v. Gen. Elec. Co.,* 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990).

The Court concludes that Defendant has not carried its burden that federal law preempts the field of state tort law under these circumstances, especially as to parties not in an employment relationship. Traditionally, tort law has been left to the states to regulate. *Grocers Supply, Inc. v. Cabello*, 390 S.W.3d 707, 717 (Tex. App. 2012) (IRCA did not preempt state tort remedies); *Madeira,* 469 F.3d at 240 ("[I]mmigration is plainly a field in which the federal interest is dominant.... State tort and labor laws, however, occupy an entirely different field."); *Vargas v. Kiewit La. Co.,* No. H–09–2521, 2012 WL 2952171, at *3 (S.D.Tex. July 18, 2012) ("[A]lthough Congress's interest is pervasive and dominant in immigration, tort and labor are areas that

traditionally have been left to the states to regulate."). The parties point to nothing that would indicate that Congress demonstrated a clear and manifest intent to supersede state tort law. *Madeira*, 469 F.3d at 240, *citing English v. Gen. Elec. Co.,* 496 U.S. at 79, 110 S.Ct. 2270 (" 'Where ... the field which Congress is said to have pre-empted' includes areas that have 'been traditionally occupied by the States,' congressional intent to supersede state laws must be 'clear and manifest.' ").

Finally there is no implied conflict preemption of state tort law. Implied conflict preemption may be found where compliance with both state and federal laws is an impossibility or state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of congress." *Hines v. Davidowitz,* 312 U.S. at 67, 61 S.Ct. 399, *quoted in Madeira,* 469 F.3d at 240. "[T]he case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to 'stand by both concepts and to tolerate whatever tension there [is] between them.' " *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 166–67, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989) (citing *Silkwood,* 464 U.S. at 256). In its enactment of IRCA, Congress noted that the legislation was not intended "to undermine or diminish in any way labor protections in existing law." H.R. Rep. 99–682(I), at 58, *as reprinted in* 1986 U.S.C.C.A.N. at 5662; *see also Brown v. Ames,* 201 F.3d 654, 661 (5th Cir.2000) (finding a House Report relevant in this determination, and concluding that Congress did not intend to preempt state law).

A "clear demonstration of conflict ... must exist before the mere existence of a federal law may be said to pre-empt state law operating in the same field." *Jones v. Rath Packing Co.,* 430 U.S. at 544, 97 S.Ct. 1305 (Rehnquist, J., concurring in part and dissenting in part), *quoted in Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 238 (2d Cir. 2006). "The mere fact of

13

"tension" between federal and state law is generally not enough to establish an obstacle supporting preemption, particularly when the state law involves the exercise of traditional police power." *Madeira.*, 469 F.3d at 241–42, *citing Silkwood v. Kerr–McGee Corp.,* 464 U.S. at 256, 104 S.Ct. 615 (holding that state award of tort punitive damages to person injured in nuclear incident did not conflict with federal remedial scheme regulating safety aspects of nuclear energy). Rather, "[t]he principle is thoroughly established that the exercise by the state of its police power, which would be valid if not superseded by federal action, is superseded only where the repugnance or conflict is so 'direct and positive' that the two acts cannot 'be reconciled or consistently stand together.' " *Jones v. Rath Packing Co.,* 430 U.S. at 544, 97 S.Ct. 1305 (Rehnquist, J., dissenting in part and concurring in part) (internal citation and quotation marks omitted), *quoted in Madeira*, 469 F.3d at 241-42.

There is no conflict here between the IRCA and the compensatory remedies under New Mexico tort law.  Here, it is not impossible for a tortfeasor to pay compensatory damages and comply with the IRCA, given that the Defendant is not the decedent's employer.  Moreover, New Mexico tort law is not an obstacle to the accomplishment of the IRCA.  The parties are not in an employment relationship.  Therefore, compensatory damages here are not impeding on Congress's decision to regulate the employment relationships of undocumented immigrants.  "Nothing in IRCA demands, or even implies, that tortfeasors should not be held liable for their negligence if the person whom they harm is working in this country illegally or has violated IRCA." *Vargas v. Kiewit Louisiana Co.*, No. CIV.A. H-09-2521, 2012 WL 2952171, at *3 (S.D. Tex. July 18, 2012). Moreover, compensatory damages in this case will not encourage future violations of the IRCA by the decedent.

14

## II.      Plaintiffs' Motion in Limine to Exclude Reference to Mr. Portillo's immigration status (Doc. 325).

Plaintiffs request that the Court exclude any reference at trial to Mr. Portillo's immigration status pursuant to Fed. R. Evid. 403.  The Court finds that decedent's immigration status *may* be relevant to the issue of lost earning capacity.  However, there is nothing in the record to suggest that Mr. Portillo was subject to imminent deportation or that his status affected his future earning capacity.  Therefore, the Court finds that any slight probative value as to his immigration status is substantially outweighed by the risk of unfair prejudice, misleading the jury, and confusion of the issues.

Defendant presented evidence that Mr. Portillo was not a citizen of the United States, was not authorized to work in the United States, and the documents (permanent residence card and social security card) submitted to his employer were not valid.  In response, Plaintiff Irma Martinez presented evidence that she was common-law married to Mr. Portillo.  She also presented evidence that Mr. Portillo had lived and worked in the United States for more than 20 years prior to his death.  Based on the time he lived and worked in the United States, Plaintiffs' expert Dr. McDonald did not use Mr. Portillo's immigration status in his lost earnings calculation.  It appears that Defendant's expert did not consider his immigration status either. **Doc. 359 at 5.**

Mr. Portillo's immigration status theoretically *may* be relevant to his lost earning capacity. *Hocza v. City of New York*, No. 06 CIV. 3340, 2009 WL 124701, at *1–2 (S.D.N.Y. Jan. 20, 2009) ("New York courts have repeatedly held that facts related to immigration status are relevant to the question of lost future earnings."); *Vargas v. Kiewit Louisiana Co.*, No. CIV.A. H-09-2521, 2012 WL 2952171, at *5 (S.D. Tex. July 18, 2012); *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 248 (2d Cir. 2006) ("although New York allows juries to compensate injured undocumented

15

workers for lost United States earnings, it instructs them to consider the workers' removability in calculating what, if any, compensation to award.").

However, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. It is unclear what, if any evidence Defendant will present to show how Mr. Portillo's undocumented status affected his earning capacity. Rather, it appears Defendant seeks to simply introduce evidence that Mr. Portillo was an undocumented immigrant.

Here, without evidence of how an undocumented status affects an immigrant's earning capacity, the Court finds that the mere fact that Mr. Portillo is undocumented is not probative of his earning capacity and is therefore substantially outweighed by the risk of unfair prejudice, speculation, misleading the jury, and confusion. Finally, the Court is not inclined to engage in a mini-trial on immigration issues without evidence showing how Mr. Portillo's undocumented status affected his earning capacity.

Allowing reference to Mr. Portillo's immigration status would invite the jury to base their damages decision on speculation, and likely cause the jury to rule emotionally against Mr. Portillo's estate because he was an undocumented immigrant, rather than the facts regarding his earning capacity. *See United States v. Rodriguez,* 192 F.3d 946, 951 (10th Cir.1999) ("Evidence may be unfairly prejudicial if it would likely provoke an emotional response from the jury or would otherwise tend to adversely affect the jury's attitude toward a particular matter"). Therefore, the Court will exclude any reference to his immigration status under Fed. R. Evid. 403 at this time.

Moreover, the Court concludes that there is insufficient evidence in the record regarding Mr. Portillo's removability at this time. Neither party briefed Mr. Portillo's removability under

immigration law, or the likelihood of his removal. Any direct reference to Mr. Portillo's "imminent deportation" or removal would be speculation, and therefore the risk of unfair prejudice or confusion of the issues substantially outweighs any probative value.

## CONCLUSION

Plaintiffs are not barred from seeking damages for lost earning capacity because decedent Abel Portillo may have been an undocumented immigrant from Mexico. Moreover, the Court will not restrict the evidence to the decedent's potential earnings in Mexico. Mr. Portillo worked at least the past 20 years in the United States, and there is no evidence in the record regarding how long he spent in Mexico or the last time he worked there.

Although Mr. Portillo's status as an undocumented immigrant may be relevant to the damages issue, the Court will exclude such evidence under Fed. R. Evid. 403. Assuming that no reference to immigration status will be made at trial, the Court is inclined at this time to deny Plaintiffs' request to question the jury about their views on undocumented immigrants.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Partial Summary Judgment on the issue of Lost Earnings and Lost Earning Capacity **(Doc. 316)** is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion in Limine **(Doc. 325)** is **GRANTED IN PART.**

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE