IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO
_____

IRMA MARTINEZ, FELIPE MARTINEZ,
LARRY MUNN, JOSE PRIETO, and
LEE HUNT, *as personal representative
of the estate of Abel Portillo, deceased*,

        Plaintiffs,

vs.                                          Case No. 1:17-cv-00922 -KWR-JFR

CONTINENTAL TIRE THE AMERICAS,
LLC, An Ohio Limited Liability Company

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendant Continental Tire the Americas, LLC's Motion to exclude the opinions of Brian McDonald, filed on February 28, 2020 **(Doc. 317)**. Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendant's motion is well-taken in part and, therefore, is **GRANTED IN PART** and **DENIED IN PART**.

### BACKGROUND

This case arises out of a single-vehicle accident allegedly resulting from the failure or blowout of a left rear Continental tire. Defendant is the tire manufacturer. Several plaintiffs were injured in the incident. Abel Portillo died, and Plaintiff Lee Hunt is the personal representative of his wrongful death estate. Plaintiffs allege that manufacturing and design defects caused the tire blowout.

On August 2, 2017, Plaintiffs filed a complaint for wrongful death and personal injuries. In April 2020, Plaintiffs agreed to the dismissal of Counts III, IV, and V.  Therefore, it appears that the following claims remain:

Count I:     Strict Products Liability

Count II:    Negligence (causing death and injury)

Count VI:   Loss of Consortium (as to Plaintiff Irma Martinez)

Plaintiffs seek certain compensatory damages.  Plaintiffs retained M. Brian McDonald, Ph.D. to opine on the economic and non-economic value of Mr. Portillo's life.  In relevant part, Dr. McDonald proposes to testify that Mr. Portillo's lost earning capacity ranged from $122,744 to $239,628 and the loss of his household services ranged from $296,856 to $338,767.

He also proposes to testify about value of life damages.  **Doc. 317, Ex. A at 4-5.**  He proposed to testify about the (1) concept and meaning of hedonic or value of life damages; (2) identify broad areas of human activities and experience which should be considered by jury in determining value of life damages; (3) explain that the value of life arises in other public policy contexts were government agencies analyze the costs and benefits of regulations; (4) and a discussion of economic research on the value of a statistical life, which includes a range of $5.4 million to $13.4 million.  *Id.* **at 4-5.**

The parties did not request a hearing on this *Daubert* motion, and they expressly asked the Court to rule on the papers.  **Docs. 452, 453.**

## LEGAL STANDARD

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise if:

2

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods, and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The touchstone of admissibility under Rule 702 is helpfulness to the trier of fact. *See Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 648 (10th Cir. 1991).

The gatekeeping function involves a two-step analysis. *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1134 (10th Cir. 2009). First, the Court must determine whether the witness may be qualified as an expert. To qualify as an expert, the witness must possess such "knowledge, skill, experience, training, or education" in the particular field so that it appears that his or her opinion rests on a substantial foundation and tends to aid the trier of fact in its search for the truth. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). "Rule 702 thus dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject." *United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir. 1991).

Second, the Court must determine whether the witness' opinions are reliable under the principles set forth in *Daubert* and *Kumho Tire*. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). In *Daubert*, the Supreme Court identified five factors that may or may not be pertinent in assessing reliability: (1) the theory or technique in question can be and has been tested; (2) it has been subjected to peer review and publication; (3) it has a known or potential error rate; (4) the existence and maintenance of standards controlling its operation; and (5) whether it has attracted widespread acceptance within a relevant scientific community. 509 U.S. at 593–94. When assessing the reliability of a proposed expert's testimony, the Court may consider the

*Daubert* factors to the extent relevant, which will depend on the nature of the issue, the expert's particular expertise, and the subject of his testimony. *Kumho Tire*, 526 U.S. at 150-51. "[W]hether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho*, 526 U.S. at 139.

The Court assesses several non-exclusive factors to determine whether the testimony will assist the trier of fact, including: (1) whether the testimony is relevant; (2) whether it is within the juror's common knowledge and experience; (3) whether there is a sufficient factual basis and reliable application of the methodology to the facts; and (4) whether it will usurp the juror's role of evaluating a witness's credibility. The question is "whether [the] reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 591, 593, 113 S.Ct. 2786; *see also United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122-23 (10th Cir. 2006).

So long as the district court has enough evidence to perform its duty in assessing the relevance and reliability of an expert's proposed testimony, a hearing is not required. *See United States v. Call*, 129 F.3d 1402, 1405 (10th Cir. 1997); *See Goebel*, 215 F.3d at 1087 (noting that a *Daubert* hearing "is not mandated" and that a district court may "satisfy its gatekeeper role when asked to rule on a motion in limine"); *United States v. Nacchio*, 555 F.3d 1234, 1251 (10th Cir. 2009). The proponent of the expert bears the burden by a preponderance of the evidence to establish that the requirements for admissibility have been met. *Id*.

Although the Court is required to conduct a *Daubert* examination of all experts before it, it need only expressly address the specific objections before it. *United States v. Avitia-Guillen*, 680 F.3d 1253, 1259 (10th Cir. 2012) ("When a party fails to object to an expert's methodology, the district court need not make explicit findings."), *citing United States v. Velarde,* 214 F.3d 1204, 1209 n.3 (10th Cir.2000) (noting the defendant did not challenge the doctor's "credentials,

4

expertise, or qualifications to testify as an expert"); *Macsenti v. Becker*, 237 F.3d 1223, 1233 (10th Cir. 2001) (specific findings on the record only required on party's objection); *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 n.2 (10th Cir. 2000) (when no objection is raised, district courts are not required to make "explicit on-the-record rulings" and, "we assume that the district court consistently and continually performed a trustworthiness analysis sub silentio of all evidence introduced at trial.").

## DISCUSSION

Defendant does not challenge Dr. McDonald's qualifications. Rather, Defendant seeks to exclude Dr. McDonald's opinions on the following compensatory damages: (1) Mr. Portillo's lost earning capacity, (2) the lost value of Mr. Portillo's household services, and (3) hedonic (value of life) damages. The Court addresses Defendant's arguments below.

### I. Law on Wrongful Death Damages.

As part of a wrongful death claim, a plaintiff may recover under New Mexico law damages for the decedents' lost earnings or lost earning capacity. NM UJI 13-1830 (instructing jury to consider lost earning capacity in arriving at damages figure); N.M.S.A. 1978 § 41-2-1 (wrongful death statute). "The purpose of the Act is to compensate the statutory beneficiaries and to deter negligent conduct. The statutory language instructs the jury to award fair and just damages, and allows the jury to consider the pecuniary injury to the decedent's statutory beneficiaries as an element of the worth of the life of the deceased. § 41–2–3. The presence or absence of pecuniary damages is a factor to be considered in arriving at a monetary figure for the value of the deceased's life." *Romero v. Byers*, 1994-NMSC-031, ¶ 17, 117 N.M. 422, 427, 872 P.2d 840, 845 (internal citations omitted). The value of future lost earnings must be "reasonably certain to be lost in the

future." NM UJI 13-1803; *see also Mitchell v. Lovato,* 97 N.M. 425, 640 P.2d 925, 927 (N.M.1982) (damages are not "reasonably certain" if they are inherently speculative).

Factors to be considered in determining the monetary value of the decedent's life include age, earning capacity, health, habits, and life expectancy. *Romero*, 872 P.2d at 846 (citing SCRA 13-1830). New Mexico law also allows damages to be awarded for the value of life apart from earning capacity. NM UJI 13-1830. Damages for loss of enjoyment of life may include but are not limited to "activities of daily living," "social leisure activities," and "internal well-being." *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1245 (10th Cir. 2000).

## II.     **Damages for Mr. Portillo's Lost Earning Capacity.**

Defendant argues that the Court should exclude Dr. McDonald's testimony on the lost value of Mr. Portillo's future earnings, because Mr. Portillo was an undocumented immigrant not entitled to work lawfully in the United States. These arguments are similar to those made in briefing on two other motions in this case. *See* **Docs. 316, 325,** *et al.* The Court already addressed Defendant's arguments and rejected them, concluding that Mr. Portillo's estate could pursue compensatory damages for future lost earnings. **Doc. 468.** For the reasons stated in the Court's prior Memorandum Opinion and Order **(Doc. 468),** the Court disagrees with Defendant's argument and declines to exclude Dr. McDonald's testimony on Mr. Portillo's lost earnings.

The record, as recounted in the Memorandum Opinion and Order (**Doc. 468**) reflects that Mr. Portillo was a Mexican citizen and undocumented immigrant. However, he had lived and worked in the United States for at least the last twenty years. He was common law married to Plaintiff Irma Martinez, a United States citizen. He had federal income tax withheld from his paycheck and paid social security and medicare taxes. While there was strong evidence of his earnings in the United States, there was no record of any earnings in Mexico. It is unclear if he

ever worked in Mexico, or when he last worked there. Moreover, the Court noted there was no evidence in the record indicating how an undocumented status affects an immigrant's earning potential. **Doc. 468 at 16.** Therefore, the Court excluded any reference to his immigration status under Fed. R. Evid. 403. *Id.*

Defendant argues that Mr. Portillo was not legally entitled to work in the United States and therefore his estate or personal representative should not receive compensation for his future lost earnings. The Court rejected that legal argument. *See* **Doc. 468 at 5-14.**

Defendant argues Dr. McDonald failed to base his opinion on sufficient facts, and thus his opinion is neither reliable nor helpful to the jury. Defendant argues that Dr. McDonald failed to consider that Mr. Portillo (1) was a Mexican citizen and (2) could have been deported at any time. For the reasons stated previously, the Court disagrees. Dr. McDonald referenced wages from the United States because Mr. Portillo lived and worked in the United States for at least the last twenty years. It would be speculative and unsupported in the record to present testimony on what Mr. Portillo would have earned in Mexico, given that it is unclear when he last lived or worked in Mexico. Defendant asserts that Mr. Portillo could have been fired from his job and deported. But based on the record before the Court, any such conclusion was speculative. **Doc. 468 at 15-16.**

Defendant cites to *Cruz v. Bridgestone/Firestone N. Am. Tire, LLC*, No. CIV 06-538 BB/DJS, 2008 WL 5598439, at *5 (D.N.M. Aug. 29, 2008), but in that case it appears that the plaintiffs had recently crossed the border into the United States and had previously been deported. *See* **Doc. 468 at 10.** In that case, without a long work history in the United States, it would have been speculative to award lost earnings based on United States wages.

### III. Hedonic Damages.

Defendant requests that Court exclude testimony putting a numerical value, benchmark, or range of values regarding the value of a statistical life as unreliable. The Court agrees that Dr. McDonald cannot quantify hedonic damages or provide a range of values for life but will allow Dr. McDonald to explain the concept of hedonic damages and what aspects of Mr. Portillo's life the jury could consider in awarding damages. Dr. McDonald listed four categories he would testify about in his report. *See* **Doc. 341-3, Ex. 3, at 4-5**. The Court will allow him to testify as to categories (1) and (2) but excludes testimony on categories (3) and (4).

"New Mexico courts allow claimants to recover hedonic damages." *Flowers v. Lea Power Partners, LLC*, No. 09-CV-569 JAP/SMV, 2012 WL 1795081, at *2 (D.N.M. Apr. 2, 2012), *citing Couch,* 2002–NMCA–084, ¶¶ 17–20. However, the Tenth Circuit noted that:

> Attempts to quantify the value of human life have met considerable criticism in the literature of economics as well as in the federal court system. Troubled by the disparity of results reached in published value-of-life studies and skeptical of their underlying methodology, the federal courts which have considered expert testimony on hedonic damages in the wake of *Daubert* have unanimously held quantifications of such damages inadmissible.

*Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1245 (10th Cir. 2000). Following this and other precedent, the majority of cases in this district limit expert testimony that attempts to place a dollar value on hedonic damages as unreliable, irrelevant, or unhelpful to the jury. *Murphy v. Sandoval Cty.*, No. 17-CV-0585 SWS/MLC, 2019 WL 8331482, at *2 (D.N.M. Feb. 5, 2019) (allowing Dr. McDonald to testify as to concept and factors to be considered in determining hedonic damages, but excluding testimony quantifying hedonic damages), *citing Flowers v. Lea Power Partners, LLC*, No. 09-CV-569, 2012 WL 1795081, at *3-4 (D.N.M. April 2, 2012)("Generally, New Mexico United States District Judges have excluded or limited expert testimony on hedonic damages."); *BNSF Ry. v. LaFarge Sw., Inc.*, 2009 WL 4279849, at *2 ("The majority rule in federal courts, however, is that expert testimony which places a *dollar figure* before the jury in an attempt

8

to *quantify* the value of a human life is inadmissible and does not meet the relevance and reliability factors set forth in *Daubert* and its progeny.")  The Court agrees with these cases and concludes that attempts by an expert to quantify the hedonic value of life is unreliable, irrelevant, or does not assist the jury.

However, the Tenth Circuit has allowed an expert witness to provide "an explanation adequate to insure the jury did not ignore a component of damages allowable under state law" by offering "his interpretation of the meaning of hedonic damages" and identifying "four broad areas of human experience which he would consider in determining those damages." *See Smith v.,* 214 F.3d at 1246.  Following *Smith*, many cases in this district allow an expert to testify on the concept of hedonic damages and explain the factors relevant to hedonic damages.  *Walker v. Spina*, 359 F. Supp. 3d 1054, 1087 (D.N.M. 2019) (allowing expert to "provide qualitative testimony defining hedonic damages and describing what factors to consider in making hedonic-damages valuations, but that an expert may not, however, quantify hedonic damages or provide benchmark figures for hedonic damages.") (collecting cases); *Murphy v. Sandoval Cty.*, No. 17-CV-0585 SWS/MLC, 2019 WL 8331482, at *2 (D.N.M. Feb. 5, 2019) (collecting cases), *citing BNSF Ry. v. LaFarge Sw., Inc.*, 2009 WL 4279849, at *2 ("The majority rule in federal courts, however, is that expert testimony which places a *dollar figure* before the jury in an attempt to *quantify* the value of a human life is inadmissible and does not meet the relevance and reliability factors set forth in *Daubert* and its progeny." (emphasis in original)); *Griego v. Douglas*, No. CIV 17-0244, 2018 WL 1010277, at *2 (D.N.M. Feb. 20, 2018) (permitting "qualitative testimony" on the "the general concept and meaning of value of life damages and the areas of human experience deserving of consideration," but excluding "quantitative measure[s]" for hedonic damages); *Chavez v. Marten Transp., Ltd.*, No. CIV 10-0004, 2012 WL 988008, at *2-3 (D.N.M. March 22, 2012) (admitting

testimony on "(1) an economist's interpretation of the concept and meaning of hedonic damages; (2) the broad areas of human experience to consider in determining hedonic damages for a particular plaintiff, including how he spent leisure time and whether he participated in recreational activities, hobbies, or community activities," *but not on figures quantifying* hedonic damages). The Court finds these cases persuasive and will allow Dr. McDonald to testify about the concept of hedonic damages and qualitative factors the jury may consider.

Plaintiffs appear to seek admission of certain "benchmarks" or a range of values of a statistical life as reported in government and peer-reviewed studies. The Court finds that this is a backdoor attempt to quantify hedonic damages, is not relevant or sufficiently reliable under the *Daubert* factors and does not assist the jury. *Walker v. Spina*, 359 F. Supp. 3d 1054, 1087 (D.N.M. 2019) (prohibiting expert from providing "benchmark figures for hedonic damages"); *BNSF Ry. Co. v. LaFarge Sw., Inc.*, No. CIV. 06-1076 MCA/LFG, 2009 WL 4279849, at *2 (D.N.M. Feb. 9, 2009) ("I construe this rule as applying to any opinion testimony which attempts to quantify (or place a monetary value on) a particular decedent's hedonic damages, *as well as* any opinion testimony which places before the jury a dollar figure or numeric formula as a so-called "benchmark figure," "guideline," or "range of values" to be used in calculating such damages"); *Harris v. United States*, No. CIV 06-0412, 2007 WL 4618597, at *2 (D.N.M. June 7, 2007)(Parker, J.)("[T]he weight of authority within this Court appears to favor excluding testimony concerning a hypothetical benchmark."); *Rivera v. Volvo Cars of North America, LLC,* No. Civ. 13-397 KG/KBM, 2015 WL 11118067, *1 (D.N.M. 2015) (rejecting attempt to quantify hedonic damages by expert, including providing benchmarks or range of values of a statistical life).

Plaintiffs argue that New Mexico state law which allows experts to quantify the value of life applies here. Plaintiffs appear to argue that this is a substantive New Mexico rule that should

apply in this proceeding. *See Couch v. Astec Industries, Inc.,* 2002–NMCA–084, ¶¶ 17–20, 132 N.M. 631, 53 P.3d 398 (allowing recovery of hedonic damages and allowing expert to quantify amount for jury). The Court disagrees.

In this diversity case, Federal law governs whether expert testimony is admissible. *Sims v. Great Am. Life Ins. Co.,* 469 F.3d 870, 879 (10th Cir. 2006) (federal rules of evidence apply in diversity case even in face of conflicting state law and noting that *Erie* is inapplicable), *cited in Walker v. Spina*, 359 F. Supp. 3d 1054, 1086 (D.N.M. 2019) (federal law governed admissibility of expert testimony as to hedonic damages); *Romine v. Parman*, 831 F.2d 944, 944 (10th Cir. 1987) ("the admissibility of evidence in diversity cases in federal court is generally governed by federal law"); *see also Smith v. Ingersoll-Rand Co.*, 214 F.3d at 1244 (noting that New Mexico substantive law allows hedonic damages but analyzing expert testimony on hedonic damages under the Federal Rules of Evidence and federal caselaw); *Flowers v. Lea Power Partners*, LLC, No. 09-CV-569 JAP/SMV, 2012 WL 1795081, at *2 (D.N.M. Apr. 2, 2012) ("In this diversity jurisdiction case, the Court must follow New Mexico law allowing the recovery of hedonic damages, but the Court must follow the federal rules of evidence as interpreted by federal case law on the admission of expert testimony."); *BNSF Ry. Co. v. LaFarge Southwest, Inc.,* Case No. 06–1076 MCA/LFG, 2009 WL 4279849, *2 (D.N.M. Feb. 9, 2009) (stating that admissibility of evidence is governed by federal law, but substantive state law governs recovery of damages). New Mexico state law allowing experts to quantify hedonic damages for the jury are therefore not applicable.

Therefore, Dr. McDonald may testify about the definition of hedonic damages and the components of life that may be considered in considering hedonic damages but may not quantify those damages or provide a range of values attributable to a statistical life, or "benchmarks." *See,*

*e.g., Murphy v. Sandoval Cty.*, No. 17-CV-0585 SWS/MLC, 2019 WL 8331482, at *3 (D.N.M. Feb. 5, 2019) ("this Court will grant County Defendants' Motion to the extent that while Dr. McDonald may discuss the concept of and factors to be considered in determining hedonic damages, he shall not attempt to place any dollar figure for or quantify hedonic damages and will limit any opinion testimony accordingly."); *Walker v. Spina*, 359 F. Supp. 3d 1054, 1087 (D.N.M. 2019) (allowing expert to "provide qualitative testimony defining hedonic damages and describing what factors to consider in making hedonic-damages valuations, but that an expert may not, however, quantify hedonic damages or provide benchmark figures for hedonic damages.") (collecting cases).

**IV.     Damages for Value of Lost Household Services.**

Defendant argues that Dr. McDonald's opinions on the value of Mr. Portillo's lost household services are not reliable or helpful to the jury because he did not base them on Mr. Portillo's factual circumstances. **Doc. 317 at 12.** The Court disagrees. Dr. McDonald considered that Mr. Portillo did the yard work at the house, painted the interior of the house, cooked and did the dishes. **Doc. 341, Ex. 3 at 2.** The fact that Mr. Portillo traveled for work influences the weight of Dr. McDonald's testimony, but does not render it unreliable or unhelpful to the jury. *See, e.g., Murphy v. Sandoval Cty.*, No. 17-CV-0585 SWS/MLC, 2019 WL 8331482, at *3 (D.N.M. Feb. 5, 2019) (In challenge to Dr. McDonald's calculation of household services damage, court concluded that "the underlying validity of an economist's factual assumptions go to the weight not the admissibility of the evidence.") (collecting cases), *citing Smith v. Auto-Owners Insurance Company*, 15-CV-1153, 2017 WL 3188476 at 4 (D.N.M. July 25, 2017) (challenges to economist's assumptions and factual presumptions in arriving at loss of earning capacity or value of loss of ability to perform household services went to weight not admissibility of opinions).

## CONCLUSION

For the reasons stated above, Dr. McDonald may testify as to damages for Mr. Portillo's lost earnings and the value of his lost household services. Dr. McDonald may testify as to hedonic damages generally but may not quantify such damages or cite to studies giving ranges for the value of life.

**IT IS THEREFORE ORDERED** that Defendant Continental Tire the Americas, LLC's Motion to exclude the expert opinions of Brian McDonald **(Doc. 317)** is **GRANTED IN PART AND DENIED IN PART.**

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE