# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

IRMA MARTINEZ, FELIPE MARTINEZ,
LARRY MUNN, JOSE PRIETO, and
LEE HUNT, *as personal representative
of the estate of Abel Portillo*, *deceased*,

      Plaintiffs,

vs.                                                                      Case No. 1:17-cv-00922-KWR-JFR

CONTINENTAL TIRE THE AMERICAS,
LLC, An Ohio Limited Liability Company

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Plaintiffs' Motion to exclude the opinions of John C. Glennon, Jr., filed on February 28, 2020 (**Doc. 322**). Mr. Glennon proposes to testify on the standard of care in safely maintaining and operating commercial vehicles, and whether Plaintiffs' employer, Trac-Work, Inc. and the driver, Plaintiff Felipe Martinez, followed those standards. Plaintiffs seek to exclude the expert testimony of Mr. Glennon on multiple grounds. Having reviewed the parties' pleadings and the applicable law, the Court finds that Plaintiffs' motion is not well-taken in part and, therefore, is **GRANTED IN PART** and **DENIED IN PART**.

### BACKGROUND

This case arises out of a single-vehicle accident allegedly resulting from the failure or blowout of a left rear Continental tire. Defendant is the tire manufacturer. Several plaintiffs were injured in the incident. Abel Portillo died, and Plaintiff Lee Hunt is the personal representative of his wrongful death estate. Plaintiffs allege that manufacturing and design defects caused the tire blowout. Defendants allege that Plaintiffs' employer and the owner of the vehicle, Trac-Work,

Inc. ("TWI"), failed to properly maintain or operate the vehicle, and the driver, Plaintiff Felipe Martinez, contributed to or caused the crash.

On August 2, 2017, Plaintiffs filed a complaint for wrongful death and personal injuries. In April 2020, Plaintiffs agreed to the dismissal of Counts III, IV, and V. Therefore, it appears that the following claims remain:

Count I:    Strict Products Liability

Count II:   Negligence (causing death and injury)

Count VI:   Loss of Consortium (as to Plaintiff Irma Martinez)

Mr. Glennon produced a fifty-three page expert report, **Doc. 361-5,** and an extensive 12 page *curriculum vitae.*  **Doc. 361-4.**  He concluded that Trac Work, Inc., the employer of several plaintiffs who owned the F-350 involved in the crash, failed to follow minimums standard of care for the safe maintenance and operation of a commercial motor vehicle.  **Doc. 361-5, at 48.**  He listed forty-eight instances where Trac Work failed to follow the minimum standard of care by violating the Federal Motor Carrier Safety Act or associated regulations, failing to follow Trac-Work's own policy manual, and failing to follow Ford's owner manual.  *Id.* **at 49-53.**  Mr. Glennon extensively reviewed the record in this case.  **Doc. 361-5 at 2-3.**

Defendants present Mr. Glennon's testimony to establish the standard of care in maintaining and operating the F-350 at issue and that that Trac-Work Inc ("TWI") and the driver of the vehicle breached their duty to maintain or operate the vehicles. Mr. Glennon does not opine on causation, but Defendants produced other experts to testify thereto.

The parties did not request a hearing on this *Daubert* motion, and they expressly asked the Court to rule on the papers.  **Docs. 450, 452, 453.**

**LEGAL STANDARD**

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods, and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The touchstone of admissibility under Rule 702 is helpfulness to the trier of fact. *See Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 648 (10th Cir. 1991).

The gatekeeping function involves a two-step analysis. *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1134 (10th Cir. 2009). First, the Court must determine whether the witness may be qualified as an expert. To qualify as an expert, the witness must possess such "knowledge, skill, experience, training, or education" in the particular field so that it appears that his or her opinion rests on a substantial foundation and tends to aid the trier of fact in its search for the truth. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004). "Rule 702 thus dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject." *United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir. 1991).

Second, the Court must determine whether the witness' opinions are relevant and reliable under the principles set forth in *Daubert* and *Kumho Tire. Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). In *Daubert*, the Supreme Court identified five factors that may or may not be pertinent in assessing reliability: (1) the theory or technique in question can be and has been tested; (2) it has been subjected to peer review and publication; (3) it has a

known or potential error rate; (4) the existence and maintenance of standards controlling its operation; and (5) whether it has attracted widespread acceptance within a relevant scientific community. 509 U.S. at 593–94. When assessing the reliability of a proposed expert's testimony, the Court may consider the *Daubert* factors to the extent relevant, which will depend on the nature of the issue, the expert's particular expertise, and the subject of his testimony. *Kumho Tire*, 526 U.S. at 150-51. "[W]hether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho*, 526 U.S. at 139. The relevance prong requires the court to consider whether the testimony will "help the trier of fact," Fed. R. Evid. 702(a), and is "relate[d] to a disputed issue in the case." *Etherton*, 829 F.3d at 1217.

The Court assesses several non-exclusive factors to determine whether the testimony will assist the trier of fact, including: (1) whether the testimony is relevant; (2) whether it is within the juror's common knowledge and experience; (3) whether there is a sufficient factual basis and reliable application of the methodology to the facts; and (4) whether it will usurp the juror's role of evaluating a witness's credibility. The question is "whether [the] reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 591, 593, 113 S.Ct. 2786; *see also United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122-23 (10th Cir. 2006).

"'[T]he rejection of expert testimony is the exception rather than the rule.'" *O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 922 (D. Colo. 2017) (quoting Fed. R. Evid. 702 advisory committee's note). " [T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.... Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id*. (citing id.)

So long as the district court has enough evidence to perform its duty in assessing an expert's proposed testimony, a hearing is not required. *See United States v. Call*, 129 F.3d 1402, 1405 (10th Cir. 1997); *See Goebel*, 215 F.3d at 1087 (noting that a *Daubert* hearing "is not mandated" and that a district court may "satisfy its gatekeeper role when asked to rule on a motion in limine"); *United States v. Nacchio*, 555 F.3d 1234, 1251 (10th Cir. 2009). The proponent of the expert bears the burden by a preponderance of the evidence to establish that the requirements for admissibility have been met. *Id*. Here, the Court directed the parties to indicate whether a hearing was necessary on this motion, **Doc. 450,** and neither party requested a hearing. **Docs. 452, 453.** The Court has Mr. Glennon's expert report and deposition testimony, and therefore finds a hearing unnecessary.

Although the Court is required to conduct a *Daubert* examination of all experts before it, it need only expressly address the specific objections before it. *United States v. Avitia-Guillen*, 680 F.3d 1253, 1259 (10th Cir. 2012) ("When a party fails to object to an expert's methodology, the district court need not make explicit findings."), *citing United States v. Velarde,* 214 F.3d 1204, 1209 n.3 (10th Cir.2000) (noting the defendant did not challenge the doctor's "credentials, expertise, or qualifications to testify as an expert"); *Macsenti v. Becker*, 237 F.3d 1223, 1233 (10th Cir. 2001) (specific findings on the record only required on party's objection); *Goebel v. Denver & Rio Grande W. R.R. Co*., 215 F.3d 1083, 1088 n.2 (10th Cir. 2000) (when no objection is raised, district courts are not required to make "explicit on-the-record rulings" and, "we assume that the district court consistently and continually performed a trustworthiness analysis sub silentio of all evidence introduced at trial.").

### DISCUSSION

Plaintiffs seek to exclude Mr. Glennon's expert testimony on the following grounds:

- He is not qualified to give the proposed testimony;
- His testimony is not relevant or reliable, will not assist the jury to understand a fact in issue, and is not based on sufficient facts or data;

5

- His testimony introduces impermissible character evidence under FRE 404(b);
- His proposed testimony gives impermissible legal conclusions; and
- His testimony should be excluded as unfairly prejudicial under Fed. R. Evid. 403.

The Court generally rejects these arguments and will admit the majority of Mr. Glennon's opinions. However, the parties should note the specific exclusions below.

I. **Mr. Glennon's testimony will assist the jury and he does not give impermissible legal conclusions warranting exclusion.**

Plaintiff argues that Mr. Glennon's expert testimony gives legal conclusions and usurps the role of the court and jury. In the argument section of their motion, Plaintiffs do not give specific citations to which opinions are inadmissible. Rather, Plaintiffs generally argue that Mr. Glennon's reference to the Federal Motor Carrier Safety Regulations ("FMCSRs") is impermissible. *See* **Doc. 322 at 23-25.** The Court disagrees. To the extent Mr. Glennon opines on the standard of care and breach of those standards, the Court finds that they will assist the trier of fact and are not impermissible legal conclusions.

An expert may give testimony that embraces an ultimate issue so long as the expert's testimony assists, rather than supplants, the jury's judgment. *United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015). *United States v. Schneider*, 704 F.3d 1287, 1293 (10th Cir. 2013) (stating that Rule 704(a) allows expert opinion on an ultimate issue so long as he explains basis for any summary opinion and does not simply tell the jury what result to reach). An expert giving mere legal conclusions without any further explanation is not helpful to the trier of fact. *Hansen Constr. Inc. v. Everest Nat'l Ins. Co.*, No. 16-CV-02902-CMA-GPG, 2019 WL 2602510, at *3 (D. Colo. June 25, 2019). The relevant Tenth Circuit law is as follows:

> Federal Rule of Evidence 704 allows an expert witness to testify about an ultimate question of fact. But the rule does not permit an expert to instruct the jury how it should rule, if the expert does not provide any basis for that opinion. To be admissible, an expert's testimony must be helpful to the trier of fact. Fed.R.Evid. 702. To ensure testimony is helpful, "[a]n expert may not state legal conclusions

drawn by applying the law to the facts, but an expert may refer to the law in expressing his or her opinion." *United States v. Bedford,* 536 F.3d 1148, 1158 (10th Cir.2008) (internal quotation marks and alterations omitted). "The line between a permissible opinion on an ultimate issue and an impermissible legal conclusion is not always easy to discern." *United States v. McIver,* 470 F.3d 550, 562 (4th Cir.2006). Permissible testimony provides the jury with the tools to evaluate an expert's ultimate conclusion and focuses on questions of fact that are amenable to the scientific, technical, or other specialized knowledge within the expert's field. *United States v. Dazey,* 403 F.3d 1147, 1171–72 (10th Cir.2005) ("Even if [an expert's] testimony arguably embraced the ultimate issue, such testimony is permissible as long as the expert's testimony assists, rather than supplants, the jury's judgment.").

As a result, "an expert may not simply tell the jury what result it should reach without providing any explanation of the criteria on which that opinion is based or any means by which the jury can exercise independent judgment." *Id.* at 1171. Expert testimony of this sort has been excluded alternatively "on the ground that it usurps the function of the jury in deciding the facts," or because it "interferes with the function of the judge in instructing the jury on the law." *Id.* at 1171 (internal quotation marks omitted). Witnesses are permitted to testify about how the law applies to a certain set of facts, so long as they provide adequate explanations for their conclusions. *Id.; see, e.g., United States v. Buchanan,* 787 F.2d 477, 483–84 (10th Cir.1986) (affirming admission of expert testimony that a homemade device was a firearm and therefore needed to be registered with the Bureau of Alcohol, Tobacco, and Firearms); *United States v. Logan,* 641 F.2d 860, 863 (10th Cir.1981) (an expert may testify about how certain funds were classified by law).

*United States v. Richter*, 796 F.3d 1173, 1195–96 (10th Cir. 2015).  For example, in *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988) the Tenth Circuit *en banc* ruled that opinion testimony by an *attorney-expert* on "the entire range of the applicable law" and directing the jury's "understanding of the legal standards" was inadmissible.  *Id.*

Generally, an expert in a negligence action may opine on the standard of care and the breach of that standard.  *Union Supply Co. v. Pust*, 583 P.2d 276, 286 (Colo. 1978) (en banc) (finding safety standards relevant and affirming trial court's ruling "that these standards must be introduced through an expert and must be authenticated as reliable and bona fide industry-wide safety codes.")."'Experts routinely testify as to whether a defendant's conduct violated the accepted standards of practice' in various professions." *Lua v. QBE Ins. Corp.*, No. 18-CV-01233-

7

KLM, 2019 WL 5104477, at *3 (D. Colo. Oct. 11, 2019), *quoting in part Southerland v. Argonaut Ins. Co.*, 794 P.2d 1102, 1107 (Colo. 1990). There is "no error with an expert applying the legal or industry standards to the facts in determining if a defendant's conduct was violative of the standards of a profession or industry." *Id.*

However, an expert is not prohibited from testifying about the standard of care in his industry merely because federal regulations form part of those standards. *See, e.g., Rutstein v. Cindy's Trucking of Illinois, Inc.*, No. 11-CV-320-F, 2012 WL 8813611, at *4 (D. Wyo. Aug. 8, 2012) (expert testimony based in part on legal standards obtained from Federal Motor Carrier Regulations generally did not invade the province of the court or jury. Utilizing industry standards and practices, of which regulations plays a part, and comparing those industry standards to defendants conduct does not state a legal conclusion); *Valyou v. Vannest*, No. 15-CV-0191-S, 2016 WL 7664288, at *3 (D. Wyo. Sept. 19, 2016) (expert basing his opinions on experience, training, federal motor carrier regulations did not give impermissible legal conclusions. A typical juror does not have significant knowledge of regulations surrounding trucking industry and expert's testimony would assist jury in understanding evidence and factual issues); *Addleman v. Keller Transp., Inc.*, No. 13-CV-230-S, 2014 WL 10222534, at *4 (D. Wyo. Dec. 9, 2014) ("Mr. Calkin will be allowed to testify regarding his knowledge, experience, and understanding of the standards and practices in the trucking industry and how those relate to the applicable federal regulations. Additionally, Mr. Calkin may testify about the parties' actions in this case…"); *Asbury v. MNT, Inc.*, No. CIV. 12-252 KG/RHS, 2014 WL 6674475, at *10 (D.N.M. Aug. 6, 2014) (Expert allowed to testify as to trucking industry standards and practice, including alleged FMCSR violations and whether employer conformed to such standards, as it would be helpful to the jury); *See also BNSF Ry. Co. v. LaFarge Sw., Inc.*, No. CIVIL 06-1076 MCALFG, 2009 WL 413601, at *3 (D.N.M. Jan. 27, 2009) (considering expert testimony on violations of Federal Motor Carrier Safety

Regulations); *Fernandez v. Transp. Designs, Inc.*, No. SA-16-CA-022-OLG, 2017 WL 3033403, at *2 (W.D. Tex. Apr. 7, 2017) (denying motion to exclude trucking expert on grounds of ultimate issue testimony); *Mcgarity v. FM Carriers, Inc.*, No. CV410-130, 2012 WL 1028593, at *5 (S.D. Ga. Mar. 26, 2012) (allowing testimony as to certain standards set by FMCSR).

Here, Mr. Glennon's testimony on the standard of care in safely maintaining and operating commercial motor vehicles tends to assist, rather than supplant, the jury's judgment. *United States v. Schneider*, 704 F.3d 1287, 1293 (10th Cir. 2013) (stating that Rule 704(a) allows expert opinion on an ultimate issue so long as he explains basis for any summary opinion and does not simply tell the jury what result to reach). The Court finds that expert testimony on the standard of care in maintaining and operating commercial vehicles will assist the jury in a specialized area they are unlikely to already be familiar with, and will not encroach on the Court's duty to instruct the jury on the legal standards. The standards of care in this state law negligence action are not conclusively set forth in the federal regulations.[1] *See, e.g., Chavez-Matchie v. Jack Cooper Transp. Co.*, No. 16-2832-JAR-GEB, 2017 WL 2378334, at *4 (D. Kan. June 1, 2017) (federal safety regulations are relevant evidence of appropriate standard of care in state negligence case, but do not *establish* standard of care). Rather, such standards are identified by Mr. Glennon based on his training, experience, and education, and are also referenced in Ford's owner's manual and in TWI's policy manual.

Therefore, generally Mr. Glennon may testify based on his experience, skills, and education his understanding of the industry standards on safely maintaining and operating commercial vehicles, and instances in which TWI or Plaintiff Felipe Martinez failed to follow those practices as to the truck at issue. However, the Court cautions that Mr. Glennon may not

---

[1] In their response, Defendants do not appear to be asserting a negligence per se defense. *See* **Doc. 361 at 16-17** (noting that standard of care in New Mexico negligence action is not exclusively set forth in federal regulations).

simply state that TWI or Plaintiff Felipe Martinez violated federal regulations practice without directly referencing specific factual instances in this case relevant to the truck or action in this case. That would be a mere legal conclusion that would not assist the trier of fact understand an issue in the case.

The Court finds that Mr. Glennon's expert testimony on the standard of care in safely maintaining and operating commercial vehicles will assist the jury, and the jury will most likely not already have that knowledge. His testimony is based on exceptional knowledge, skill, and experience in the trucking industry.

## II. Glennon is qualified to offer expert opinion on standard of care commercial fleets and drivers.

Plaintiffs argue that Mr. Glennon is not qualified to opine on (1) the FMCSRs or the standard of care and (2) Plaintiff Felipe Martinez's sleep apnea and whether it is disqualifies him from driving the truck at issue. **Doc. 322 at 13-14.**

As explained above, the Court must first determine whether Mr. Glennon's knowledge, skill, experience, training or education qualifies him to render his proposed opinion. *Schulenberg*, 911 F.3d at 1282. To satisfy this standard, Mr. Glennon must possess "such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (citations omitted). The Tenth Circuit has held that [a]s long as an expert stays "within the reasonable confines of his subject area,' ... a lack of specialization does not affect the admissibility of [the expert] opinion, but only its weight." *Ralston,* 275 F.3d at 970 (alteration in original) (quoting *Compton v. Subaru of America, Inc.,* 82 F.3d 1513, 1520 (10th Cir.1996), *overruled on other grounds by Kumho Tire Co.,* 526 U.S. at 147).

10

Accordingly, the "dispositive question" is whether the issue on which the expert seeks to testify is "within the reasonable confines" of his subject area. *Ralston v. Smith & Nephew Richards*, Inc., 275 F.3d 965, 970 (10th Cir. 2001) (citations omitted).

The Court finds that Mr. Glennon's knowledge, skill, experience, training, and education qualify him to render an opinion on safely maintaining and operating commercial vehicles and the breach of that standard. Mr. Glennon does not opine on whether the breach of those standards caused the accident or injuries. Mr. Glennon's curriculum vitae establishes that he is well qualified to offer the proposed testimony on the standard of care in safely maintaining and operating commercial vehicles. **Doc 361-4, Ex. 4.** His CV is extensive, and in summary provides as follows. He has a bachelor of science degree in automotive technology. **Ex. 4 at 1.** He has had a commercial driver's license since 1998 and is a master certified automotive technician with the National Institute for Automotive Service Excellence. **Ex. 4 at 2-3.** Mr. Glennon has extensive relevant certifications, including preventative maintenance and inspection, brake systems, and steering and suspensions systems. **Doc. 361-4, Ex. 4, at 2-8.** He also has attended numerous conferences or seminars. From 1992 to present, Defendant has worked as a forensic automatic technologist and in crash forensics. His experience includes crash reconstruction analysis, mechanical failure analysis, and truck safety and compliance analysis.

Defendants have established that Mr. Glennon is well-qualified to testify as an expert on the proposed matters in his expert report. **Doc. 361-4, Ex. 4.** He is qualified to offer opinions regarding industry standards as they apply to the maintenance, safety, and enforcement program used by commercial fleet operators to ensure the safe operations of commercial vehicles and evaluate how TWI's program compares to those standards. He is also well qualified to opine on safety programs concerning the operation of commercial fleet vehicles in terms of maintenance, repair, driver training, and enforcement of said policies. Finally, he is qualified to opine on TWI's

11

alleged lack of adequate safety, maintenance, and enforcement programs as they apply to the F-350 in question and the driver.

Plaintiffs do not specifically dispute these qualifications but argue that he is not a lawyer and therefore cannot speak to the standard of care as set forth in the regulations. As explained above in Section I, Mr. Glennon does not give impermissible legal conclusions. Mr. Glennon is well-qualified to give the proposed testimony and his testimony will aid the trier of fact in understanding industry standard safety programs and policies.

Plaintiffs also argue that Mr. Glennon does not have sufficient experience operating a commercial motor vehicle. However, his testimony falls well within his extensive experience, training, and education in safely maintaining and operating commercial motor vehicles.

However, there is nothing to indicate that Mr. Glennon is qualified to testify whether Mr. Martinez had sleep apnea and whether that disqualified him from driving the truck. Therefore the Court will exclude his expert opinion on Mr. Martinez's sleep apnea and how that affected his ability to operate the truck.

### III. Mr. Glennon's expert testimony is generally reliable, relevant, based on sufficient data, and will assist the trier of fact.

Plaintiffs argue that Mr. Glennon's opinions are unreliable, not based on sufficient facts or data, not the product of reliable principles and methods, and will not assist the jury. The Court disagrees in part and finds Mr. Glennon's opinions generally reliable and based on sufficient facts or data but will exclude certain opinions below.

For proposed testimony to be reliable, it must be "supported by appropriate validation" and there must be "good grounds" for it. *Daubert*, 509 U.S. at 590. "It is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate." *Goebel v. Denver & Rio Grande Western R.R. Co.,* 215 F.3d 1083, 1088 (10th Cir.2000). An expert opinion must be based on facts

that enable the expert "to express a reasonably accurate conclusion as opposed to conjecture or speculation [but] absolute certainty is not required." *Kieffer v. Weston Land, Inc.,* 90 F.3d 1496, 1499 (10th Cir.1996) (citation omitted); *see also Robinson v. Missouri Pac. R.R. Co.,* 16 F.3d 1083, 1089–90 (10th Cir.1994) (when expert's opinion had some basis in fact, jury could determine whether testimony was helpful). The Court, generally, should focus on the expert's methodology rather than the expert's conclusions. Nevertheless, more than "the *ipse dixit* of the expert" must connect the expert's conclusions to the existing data. *General Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997); *see also Black's Law Dictionary* 905 (9th ed.2009) (defining *ipse dixit* as "[s]omething asserted but not proved").

Plaintiffs argue that several of Mr. Glennon's conclusions are unsupported in the record, speculative, or unreliable. **Doc. 322 at 15-19.** Generally, the Court finds Mr. Glennon's opinions based in the facts and likely to assist the trier of fact. The Court addresses Plaintiffs' arguments in turn.

Plaintiffs argue that Mr. Glennon has no evidence that TWI overloaded the truck or tires. The Court disagrees. Mr. Glennon extensively cites the basis for believing the truck may have been overloaded and the tire at issue "overdeflected". *See, e.g.,* **Doc. 361-5 at 2-20** (Mr. Glennon's factual summary of record) **and Doc. 361-5 at 43-44** (Mr. Glennon's opinion on weight of truck and trailer and his reasoning and methodology in arriving at that conclusion). His opinion is not conclusive as the truck was not apparently weighed after the crash. Plaintiffs' argument goes to the weight, but not the admissibility, of Mr. Glennon's testimony on this matter. Similarly, Mr. Glennon's opinion that the truck was modified to load pallets in the back and the rear springs were upgraded to carry more weight are opinions based in the facts of the case, and Plaintiffs may attack the weight of that testimony on cross-examination. Similarly, Mr. Glennon's opinion about how

13

much weight the truck can bear before it is "overloaded" is based on reliable methods and principles, and the weight of that opinion can be attacked on cross-examination.

However, the Court will exclude his expert testimony about sleep apnea. **Doc. 322 at 18.** The Court agrees that this is speculative and not sufficiently based on the facts in the record, and Mr. Glennon is otherwise not qualified to testify about sleep apnea. Mr. Glennon may testify whether TWI and Mr. Martinez kept adequate records of Mr. Martinez's driving time and the importance of those records in the industry, but he may not speculate as to whether Mr. Martinez was in fact fatigued as it would be speculative and would not assist the jury. *Yazzie v. Fezatte*, No. 16-CV-00472 JAP, 2018 WL 947971, at *2 (D.N.M. Feb. 16, 2018) (excluding fatigue testimony in similar case).

Plaintiffs also argue that Mr. Glennon's testimony about the regulatory violations is unreliable and will not assist the jury because they are irrelevant. Specifically, Plaintiffs argue these opinions are irrelevant because Mr. Glennon does not tie them to causation. Mr. Glennon does not testify as to causation but will testify whether industry standard safety program policies were in place and whether they were followed. Defendants assert they have other experts to testify on causation. Mr. Glennon's methodology appears to be reliable and appropriate for his field – he identifies industry standard safety practices and identifies based on the record before him whether TWI and Mr. Martinez followed those procedures.

The Court agrees with Plaintiffs that only violations relevant to the operation and maintenance of truck at issue and may be admitted. Mr. Glennon's testimony does that and tends to go to the elements of duty and breach. The Court generally finds Mr. Glennon's testimony relevant to the maintenance and the truck at issue. Without hearing the evidence, it is difficult to make specific relevance determinations. The Court will hear specific relevance objections at a later time.

The testimony is also relevant. Generally, it is the proponent's burden to establish the controlling standard of care through expert testimony. *See Gallardo*, 752 F.3d at 871, *cited in Martinez v. United States*, No. 18-CV-00873-CMA-KMT, 2020 WL 5549116, at *7 (D. Colo. Aug. 26, 2020), *report and recommendation adopted*, No. 18-CV-00873-CMA-KMT, 2020 WL 5545367 (D. Colo. Sept. 16, 2020); *see also Dionne v. ITP W. Express, Inc.*, No. 19-2606-DDC-GEB, 2020 WL 4347044, at *4 (D. Kan. July 29, 2020) (as to case involving the Federal Motor Carrier Safety Regulations, "Kansas negligence law permits plaintiffs to use industry standard safety regulations to demonstrate the degree of care owed by defendant."). Mr. Glennon may testify as to the standard of care and is not precluded from doing so merely because the standard of care is set forth in federal statutes and regulations.

Moreover, the Court finds that Mr. Glennon's proposed testimony on the standard of care will aid the jury and not usurp the jury's role. The standard of care in the commercial trucking industry is generally not within the knowledge of the jury and his explanation of those standards will likely assist the jury in this case.

### IV. **Mr. Glennon's proposed testimony is generally not impermissible character evidence under Fed. R. Evid. 404(b).**

Plaintiffs argue that Mr. Glennon's report contains impermissible character evidence regarding TWI's or Mr. Martinez's past actions. Defendants assert they do not introduce character evidence at all. Defendants argue that Mr. Glennon's report focuses on the service history of the specific vehicle at issue and its parts. Mr. Glennon's report explains the maintenance history of the vehicle and its parts and discusses the lack of records of maintenance on the vehicle. He also opines that TWI did not have an appropriate system in place to ensure the vehicle was adequately maintained. He will opine that there was a lack of system in place to ensure the tires were in

appropriate condition. He will also opine that there was no system or record keeping in place to ensure the vehicle was not overloaded.

FRE 404(b) provides:

**(1)** *Prohibited Uses***.** Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
**(2)** *Permitted Uses; Notice in a Criminal Case***.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

The above proposed testimony does not appear to be propensity evidence submitted to show that TWI or Mr. Martinez acted in accordance with their prior acts. Rather, the proposed testimony appears to be directly related to the maintenance, operation, and condition of the truck prior to the crash and whether TWI had an adequate record system.

The Court will allow (a) testimony related to the record keeping of the vehicle and the maintenance system in place; (b) testimony on the records of the condition of the tire, or lack thereof; and (c) testimony on the weight of the truck and whether it was overloaded. It appears that this testimony does not show prior violations or bad acts but shows an inadequate safety or maintenance program directly related to the safety and condition of the vehicle prior to the crash. Therefore, at this point the Court will not exclude Mr. Glennon's testimony under Fed. R. Evid. 404.

However, the Court is not inclined to admit every possible driving violation by Mr. Martinez. Any violation must have a close connection to the accident. *See, e.g., Cox v. Swift Transportation Co. of Arizona & LLC*, No. 18-CV-0117-CVE-JFJ, 2019 WL 3719887, at *6 (N.D. Okla. Aug. 7, 2019) ("For example, the fact that plaintiff may have exceeded the number of hours he was permitted to drive about a month before the accident occurred does not appear to be relevant.").

16

Because Plaintiffs did not identify with specificity which of the 48 violations is character evidence, the Court declines to *sua sponte* review at each time each violation and determine whether it is character evidence. Therefore, the Court defers ruling on which of the specific violations is inadmissible. *See, e.g., Cox v. Swift Transportation Co. of Arizona & LLC*, No. 18-CV-0117-CVE-JFJ, 2019 WL 3719887, at *9 (N.D. Okla. Aug. 7, 2019) ("However, it is not clear from plaintiffs' response which specific incidents from Wai's driving history that plaintiffs may seek to admit at trial, and the Court will not preliminarily assess the admissibility of each piece of potential evidence.").

### V. **Probative value of testimony is not substantially outweighed by unfair prejudice or confusion of the issues under Fed. R. Evid. 403.**

Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of ... unfair prejudice, confusion of the issues, or misleading the jury...." Fed.R.Evid. 403. Evidence may be unfairly prejudicial if it would likely provoke an emotional response or otherwise affect the jury's attitude toward a particular matter. *See United States v. Rodriguez,* 192 F.3d 946, 951 (10th Cir.1999). "In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Deters v. Equifax Credit Info. Servs., Inc.,* 202 F.3d 1262, 1274 (10th Cir.2000). The Court must be mindful that the "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." *United States v. Smalls,* 605 F.3d 765, 787 (10th Cir.2010).

Plaintiffs argue that Mr. Glennon's testimony is unfairly prejudicial because it is character evidence and will influence the jury to render a verdict against them on the basis that TWI has the propensity to act negligently. **Doc. 322 at 26.** Plaintiffs also argue that his testimony would confuse the issues and distract the jurors from the material issues in this case.

17

As the Court explained above, Mr. Glennon's testimony is generally relevant, probative, and not propensity or character evidence. The Court finds that the probative value of Mr. Glennon's unexcluded testimony is not substantially outweighed by a danger of unfair prejudice or confusion of the issues.

## CONCLUSION

For the reasons stated above, Mr. Glennon is qualified to give the proposed expert testimony and that testimony will generally assist the trier of fact, is relevant, and is based on reliable methodologies. However, the Court excluded certain testimony for the reasons stated above.

**IT IS THEREFORE ORDERED** that Plaintiffs' motion to exclude the expert opinions of John Glennon **(Doc. 322)** is **GRANTED IN PART AND DENIED IN PART.**

_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE