## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

IRMA MARTINEZ, FELIPE MARTINEZ,
LARRY MUNN, JOSE PRIETO, and
LEE HUNT, *as personal representative*
*of the estate of Abel Portillo*, *deceased*,

       Plaintiffs,

vs.                                                        Case No. 1:17-cv-00922-KWR-JFR

CONTINENTAL TIRE THE AMERICAS,
LLC, An Ohio Limited Liability Company

       Defendant.

### MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** comes before the Court upon Plaintiffs' motion in limine to exclude certain warranty adjustment data **(Docs. 517, 520)**. Having reviewed the parties' pleadings and the applicable law, the Court finds that the motion is **NOT WELL-TAKEN** and, therefore, is **DENIED.**

### BACKGROUND

This case arises out of a single-vehicle accident allegedly resulting from the failure or blowout of a left rear Continental tire. Defendant is the tire manufacturer. Several plaintiffs were injured in the incident. Abel Portillo died, and Plaintiff Lee Hunt is the personal representative of his wrongful death estate. Plaintiffs allege that defects resulting in tread separation caused the tire blowout.

---

[1] This is a redacted opinion in which certain language was removed at the request of the parties. The Court's full opinion is in the *Sealed Memorandum Opinion and Order* (Doc. 571) filed on June 14, 2021.

On August 2, 2017, Plaintiffs filed a complaint for wrongful death and personal injuries. In April 2020, Plaintiffs agreed to the dismissal of Counts III, IV, and V.  Therefore, it appears that the following claims remain:

Count I:          Strict Products Liability

Count II:         Negligence (causing death and injury)

Count VI:        Loss of Consortium (as to Plaintiff Irma Martinez)

Plaintiffs seek compensatory and punitive damages.

## DISCUSSION

Plaintiffs request that the Court exclude evidence regarding tire production numbers or warranty adjustment rates calculated from the production numbers associated with the "Subject Tire Line" (General Grabber HTS light truck tires size LT245/75R17LR-E produced at the Mt. Vernon plant between 2012 and 2018).  Warranty adjustment data is information Defendant collects about tires that are returned under Defendant's warranty.  **Doc. 440 at 2**.  Defendant asserts that there were only two warranty adjustments for tread separation out of all tires it produced. Plaintiffs argue that the tire production numbers and warranty adjustment data rate is (1) not relevant under Fed. R. Evid. 401 and 402 and (2) otherwise should be excluded under Fed. R. Evid. 403 as unfairly prejudicial, confusing, misleading, and a waste of time.

Plaintiffs seek to introduce warranty adjustment data for their own purposes, but request that the Court prohibit Defendant from "mentioning or introducing irrelevant and misleading information about the number of tires it produced in the Subject Tire Line or the adjustment rates that Defendant intends to calculate using this production data." **Doc. 520 at 5.**  The Court disagrees with Plaintiffs' arguments and declines to exclude the number of tires produced or the overall warranty adjustment rate for the subject tire line.

I. __The number of tires produced and the warranty adjustment rate is relevant__.

"Irrelevant evidence is not admissible."  Fed. R. Evid. 402. Evidence is relevant if it "has any tendency to make a fact more or less probable that it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. "[A] fact is 'of consequence' when its existence would provide the fact-finder with a basis for making some inference, or chain of inferences, about an issue that is necessary to a verdict," but it only need to have "*any* tendency" to do so. *United States v. Jordan,* 485 F.3d 1214, 1218 (10th Cir.2007) (emphasis added). The standard for relevance is liberal. *United States v. Leonard,* 439 F.3d 648, 651 (10th Cir.2006) ( "Rule 401 is a liberal standard."); *see also United States v. Cerno,* 529 F.3d 926, 934 n. 5 (10th Cir.2008) ("[T]he threshold for relevance under the Federal Rules of Evidence is not a high one.").

Plaintiffs alleges the following claims under New Mexico law:

Count I:          Strict Products Liability

Count II:         Negligence (causing death and injury)

Count VI:         Loss of Consortium (as to Plaintiff Irma Martinez)

As to the strict product liability claims, Plaintiffs argue that the failed tire was defectively manufactured or designed, and they also allege failure to warn.  *See* **Doc. 538 at 6.**  The Court concludes that the warranty adjustment rate is relevant and admissible under Fed. R. Evid. 403.

Under New Mexico law, a manufacturer can be held strictly liable for "unreasonable risk of injury resulting from a condition of the product or from a manner of its use. Such a risk makes the product defective. This rule applies even though all possible care has been used by the supplier in putting the product on the market."  NM UJI 13-1406.   New Mexico recognizes three types of defects: (1) manufacturing defects, (2) design defects, and (3) warning defects. *Fernandez v. Ford Motor Co.,* 118 N.M. 100, 109, 879 P.2d 101, 110 (Ct.App.1994).

To recover under a strict products liability theory in New Mexico, a plaintiff must demonstrate that: (1) "the product was defective;" (2) "the product was defective when it left the hands of the defendant and was substantially unchanged when it reached the user or consumer;" (3) "because of the defect the product was unreasonably dangerous to the user or consumer;" (4) "the consumer was injured or damaged;" and (5) "the defective product was the proximate cause of the injury or damage." *Garner v. Raven Indus., Inc.*, 732 F.2d 112, 114 (10th Cir. 1984). In considering whether a product is "unreasonably dangerous," a plaintiff must demonstrate that "a reasonably prudent person having full knowledge of the risk would find [the risk] unacceptable." *Bustos v. Hyundai Motor Co.*, 2010-NMCA-090, 149 N.M. 1, at *12 (citing UJI 13-1407 NMRA). The question of "[w]hether a product is unreasonably dangerous, and therefore defective, is ordinarily a question for the jury." *Nowell v. Medtronic, Inc.*, 372 F.Supp. 3d 1166, 1228 (D.N.M. 2019) (Browning, J.) (quoting *Smith ex rel. Smith v. Bryco Arms*, 2001-NMCA-090, ¶ 14, 131 N.M. 87).

When considering whether a product is defective to support liability, the jury is instructed to engage in "a risk-benefit calculation" and "balance meritorious choices for safety made by the manufacturer while minimizing the risk that the public will be deprived needlessly of beneficial products." *Smith*, 2001-NMCA-090, at ¶ 14. In reaching its conclusion, the jury may consider:

> (1) the usefulness and desirability of the product...; (2) the availability of other and safer products to meet the same need...; (3) the likelihood of injury and its probable seriousness, i.e., 'risk,'...; (4) the obviousness of the danger...; (5) common knowledge and normal expectation of the danger (particularly for established products)...; (6) the avoidability of injury by care in use of the product (including the effect of instructions or warnings)...; and (7) the ability to eliminate the danger without seriously impairing the usefulness of the product or making it unduly expensive.

*McDonald v. Zimmer, Inc.*, 2020-NMCA-020, ¶ 33, 461 P.3d 930 (citing UJI 13-1407 NMRA, committee notes).

Initially, Plaintiffs argue that statistical evidence in general is irrelevant to a strict products liability claim. *See* **Doc. 520 at 5.**  Although Defendant could be liable under a Strict Product Liability theory if the Failed Tire was the only defective tire produced, Plaintiffs have not cited to law showing that statistical evidence is irrelevant to the unreasonable risk analysis. The proposed evidence could tend to rebut inferences that there were systemic issues at the factory which caused the defect. Although Plaintiffs provided a string cite of cases that did not involve without statistical evidence, Plaintiffs have not shown that statistical evidence is irrelevant from the inquiry.

Rather, the Court concludes that the warranty adjustment data is relevant for the following reasons.  First, to the extent Plaintiffs argue the tire was defectively designed, the evidence of warranty adjustment rates for tread separation is clearly relevant.  **Doc. 530-1 at 10.**

Second, to show a manufacturing defect, Plaintiffs apparently intend to argue that the tire was defectively manufactured due to a variety of issues in the manufacturing process.  Plaintiffs argue in part that Defendant (1) failed to adequately train plant workers, (2) failed to  adequately control temperature inside plant, (3) failed to fix or prevent roof leaks that caused contamination, and (4) pushed quotas and bonus programs at all stages of the production that incentivized the defective manufacture of tires.  Because these alleged systemic manufacturing issues would clearly affect other tires, evidence of whether there were other reported defectively manufactured tires is clearly relevant.

Third, the warranty adjustment data is also relevant to Plaintiffs' claim for compensatory damages for aggravating circumstances and punitive damages under the wrongful death statute. NM UJI 13-1830.  The purpose of these damages is to, *i.e.* "to promote safety of life and limb by making negligence that causes death costly to the wrongdoer." *Stang v. Hertz Corp.,* 81 N.M. at 350–51, 467 P.2d at 16–17.

To show aggravating circumstances and punitive damages, Plaintiffs intend to argue that the design of the inner-liner for the Subject Tire was reckless, Defendant knew it could lead to an increased risk of tread/belt detachments, and Defendant was willful in not investigating or recalling these Subject Tire following the adjustments. **Doc. 552 at 17-18, Doc. 343 at 5-6.** Plaintiffs also argue that there were systemic issues affecting all tires made that the Mt. Vernon plant, including insufficient training of plant employees, inadequate inspections, and placing costs over safety. The warranty adjustment data is relevant evidence on systemic issues in the Mt. Vernon manufacturing plant.

Plaintiffs argue in detail that the warranty adjustment rate is not representative of the actual failure rate of the Subject Tire due to defects in determining what qualifies for an adjustment. Defendant does not appear to argue that warranty adjustment rate is in fact a "failure rate" for the tire. Plaintiffs' arguments about the probative value of the warranty adjustment data generally goes to its weight, not whether it is admissible.

Plaintiffs assert that they have not received all discovery necessary to verify the warranty adjustment numbers. The Court notes that discovery has been extensively litigated in this case, and Plaintiffs have not appealed any discovery decision to the undersigned. Plaintiffs limited their request to twenty warranty adjustment codes. **Doc. 158 at 74.** To the extent Plaintiffs seek discovery on other tire lines, Plaintiffs have not shown that other tire lines are substantially similar to the Subject Tire line. Plaintiffs have not persuasively shown why the Court should exclude the fact that there were two tread belt separations out of all the tires Defendant produced.

Finally, Plaintiffs state that they intend to use the warranty adjustment data to show prior notice on their failure to warn claim. The Court will not allow the jury to hear a one-sided

presentation on the warranty adjustment data and would necessarily allow Defendants to present their own evidence on the warranty adjustment data and its meaning.

## II.     Court will not exclude warranty adjustment data under Fed. R. Evid. 403.

Moreover, the Court does not believe it is appropriate to exclude the production numbers or the warranty adjustment rate under Fed. R. Evid. 403.

Federal Rule of Evidence 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403. Evidence is not unfairly prejudicial merely because it damages a party's case. *See United States v. Caraway,* 534 F.3d 1290, 1301 (10th Cir.2008); *United States v. Curtis,* 344 F.3d 1057, 1067 (10th Cir.2003); *United States v. Martinez,* 938 F.2d 1078, 1082 (10th Cir.1991). Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.' " *United States v. Caraway,* 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee's notes). "In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Deters v. Equifax Credit Info. Servs., Inc.,* 202 F.3d 1262, 1274 (10th Cir.2000). The Court must be mindful that the "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." *United States v. Smalls,* 605 F.3d 765, 787 (10th Cir.2010).

For the reasons stated above, the Court does not believe that placing the adjustment data which Plaintiffs seek to introduce into context would confuse the issues, mislead the jury, or waste time.  The Court finds that the probative value of the warranty adjustment data is not substantially

outweighed by the risk of unfair prejudice, confusion of the issues, misleading the jury, or wasting time.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion in *Limine* to exclude warranty adjustment data (**Docs. 517, 520**) is **DENIED.**

**IT IS SO ORDERED.**

_____
**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**