# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

————————————

IRMA MARTINEZ, FELIPE MARTINEZ,
LARRY MUNN, JOSE PRIETO, and
LEE HUNT, *as personal representative
of the estate of Abel Portillo, deceased,*

       Plaintiffs,

vs.                                                                    No. 1:17-cv-00922-KWR-JFR

CONTINENTAL TIRE THE AMERICAS,
LLC, *An Ohio Limited Liability Company*

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Defendant's Motion Strike Plaintiffs'
Expert Dr. Barry M. Crown, filed March 21, 2022 (**Doc. 597**), and Plaintiffs' Motion to Extend
Deadlines for Submitting Expert Reports Related to Plaintiff Felipe Martinez's Damages, filed
March 22, 2022 (**Doc. 598**).  This matter was fully briefed on April 19, 2022 and is ready for
decision.  Having reviewed the parties' pleadings, evidence, and the applicable law, the Court finds
that Defendant's Motion to Strike is well-taken and therefore is **GRANTED**. Plaintiffs' motion to
extend deadlines is **DENIED**.

## BACKGROUND

This case arises out of a single-vehicle accident allegedly resulting from the failure or
blowout of a left rear Continental tire (the "subject tire").  The accident occurred on February 18,
2016.  Plaintiffs allege that manufacturing defects in the subject tire resulted in a tread-belt

separation.   Defendant is the tire manufacturer.   Several plaintiffs were injured in the incident, and Mr. Portillo died.

On August 2, 2017, Plaintiffs filed a complaint for wrongful death and personal injuries. In April 2020, Plaintiffs agreed to the dismissal of Counts III, IV, and V.   Therefore, it appears that the following claims remain:

Count I:        Strict Products Liability

Count II:       Negligence (causing death and injury)

Count VI:       Loss of Consortium (as to Plaintiff Irma Martinez)

Plaintiffs seek compensatory and punitive damages.

Plaintiffs' expert disclosure deadline ran in February 2019.   That month, Plaintiffs disclosed an expert report by Dr. Kelly, who recommended that Mr. Martinez be evaluated for a possible traumatic brain injury.   Mr. Martinez was evaluated for a traumatic brain injury by Dr. Barry Crown three years later on January 28, 2022.   Plaintiffs disclosed Dr. Crown's expert report to Defendant on February 22, 2022.   Dr. Crown found that Mr. Martinez has a cognitive disorder, post-traumatic brain injury, post-traumatic headaches, and adjustment disorder with post-traumatic basis. **Doc. 598, Ex. 4 at 6-7.**

Dr. Crown "will testify that Mr. Martinez is suffering from several permanent disorders and conditions that will require follow up care, affect his ability to interact with his children, affect his ability to find gainful employment, and cause him to be at higher risk for early onset degenerative brain disorders." **Doc. 601 at 12.**   Previously, Plaintiffs' expert disclosures suggested that Mr. Martinez's lost income damages would not be significant.   *See* **Doc. 597-4** (Dr. Kelly noted that Plaintiff has no work-related restrictions and that he works 8 days in a row, ten hours per day).

A pretrial conference is scheduled for June 15, 2022, and trial is scheduled for July 18, 2022.  **Doc. 596.**  The Court set a number of deadlines related to trial.  The Court required that motions in limine be filed 30 days before trial.  **Doc. 596 at 1.**  Exhibit and witness lists are due 3 weeks before trial.  *Id.* The dispositive motions deadline, which encompasses *Daubert* motions, has long passed.

## DISCUSSION

On February 22, 2022, Plaintiffs disclosed an expert report by Dr. Barry Crown to Defendant.  Dr. Crown opined that Plaintiff Felipe Martinez suffers from traumatic brain injury. This expert report was based on Dr. Crown's January 28, 2022 evaluation of Mr. Martinez. Plaintiffs also updated Dr. Kelly's report based on Dr. Crown's report.  However, Plaintiffs' expert disclosure deadline ran February 14, 2019, more than three years ago.

Defendant moved to strike Dr. Crown's late expert report, and Dr. Kelly's supplement. Plaintiffs request that the Court enter an order extending the deadline for submitting expert reports related to Felipe Martinez's damages to allow for the consideration of Dr. Crown's expert report and Dr. Kelly's supplement.

As explained below, the Court finds that the late disclosure of the expert reports is not substantially justified or harmless.  Therefore, the Court will exclude Dr. Crown's report and Dr. Kelly's supplement.

## I.   <u>Relevant Law</u>.

A party must disclose any expert witness it intends to call at trial, and in the case of a retained expert provide that expert's written report. *See* Fed. R. Civ. P. 26(a)(2).  A party must provide expert disclosures "at the times and in the sequence that the court orders." *See Harris v. Remington Arms Company, LLC*, 997 F.3d 1107, 1112 (10th Cir. 2021) (citing Fed. R. Civ. P. 26(a)(2)(D)).

Here, the parties appear to agree that Plaintiffs' expert disclosure deadline was February 14, 2019.  Because Plaintiffs failed to disclose Dr. Crown's expert report by that deadline, Dr. Crown cannot testify unless the delay "was substantially justified or is harmless." *See id.* (citing Fed. R. Civ. P. 37(c)(1)). This decision is within the district court's discretion.  *See F & H Coatings, LLC v. Acosta*, 900 F.3d 1214, 1223 (10th Cir. 2018); *Coletti v. Cudd Pressure Control*, 165 F.3d 767, 777 (10th Cir. 1999) (quoting *FDIC v. Oldenburg*, 34 F.3d 1529, 1555 (10th Cir. 1994)).

The Tenth Circuit has identified four factors a court should consider when deciding whether the failure to disclose an opinion is substantially justified or harmless:

(1) the prejudice or surprise to the party against whom the testimony is offered;
(2) the ability of the party to cure the prejudice;
(3) the extent to which introducing such testimony would disrupt the trial; and
(4) the moving party's bad faith or willfulness.

*Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Company,* 170 F.3d 985, 993 (10th Cir. 1999). Plaintiffs bear the burden to establish that these factors weigh in favor of allowing a new expert opinion. *See The Quapaw Tribe of Okl. v. Blue Tee Corp.*, No. 03-CV-0846-CVE-PJC, 2010 WL 3909204, at *3 (N.D. Okl. Sept. 29, 2010) (requiring party that violated Rule 26 to show that its "untimely disclosure of new expert testimony is harmless or substantially justified.")

Plaintiffs appear to agree that this same standard applies to its motion to extend deadlines for submitting expert disclosures. *See* **Doc. 605 at 2** (applying *Woodworker's* standard). Therefore, the Court will rule on the parties' motions together.

## II.   <u>Plaintiffs' late expert disclosure was not substantially justified or harmless</u>.

Upon considering and weighing the *Woodworker's* factors, the Court concludes that Plaintiffs have failed to show that the untimely disclosure of Dr. Crown's expert opinion, and Dr. Kelly's supplement based on that opinion, was substantially justified or harmless.

As to the first factor, the Court finds that Defendant was prejudiced by the disclosure of the expert opinion three years after the disclosure deadline.  As explained in detail by Defendant,

it would be forced to conduct extensive discovery as the expert opinion added new damages evidence.  This would delay trial and would be expensive.  The Court finds that any delay would further prejudice Defendant, as this case has been pending for five years.  Therefore, this factor weighs against Plaintiffs.

Plaintiffs assert that Defendant was aware that Mr. Martinez was advised to seek a traumatic brain injury evaluation. **Doc. 605 at 3.**  The Court concludes that this does not alleviate the prejudice suffered by Defendant. *See Harris*, 997 F.3d at 1112.  Plaintiffs' expert Dr. Kelly noted that Defendant was working a full time job.  If anything, the fact that Mr. Martinez did not produce evidence of traumatic brain injury six years after the accident would lead Defendant to reasonably believe that no such evidence existed.  The Court does not believe that Defendant was on sufficient notice that it had to prepare to preemptively hire a neurological expert or an expert to opine on Mr. Martinez' ability to work in light of a traumatic brain injury, when Mr. Martinez' own expert stated he was working a full time, physical demanding job.  **Doc. 597-4 at 5-6.** Dr. Crown's expert disclosure added new damages to the case, which Defendant could not have predicted.

As to the second factor, the Court finds that Plaintiffs are unable to cure the prejudice without reopening discovery and continuing the trial, at considerable expense.  *See Sonrisa Holding, LLC v. Circle K Stores, Inc.*, 835 F. App'x 334, 344 (10th Cir. 2020) ("while Defendant may have had *some* ability to cure the prejudice, this ability was constrained by costs and court-imposed deadlines. Again, we find the district court did not abuse its discretion in so concluding. While the prejudice could have been cured, to do so would have been both costly and timely."). Defendant asserts it would have to:

- Obtain medical records from medical providers;
- Depose several of Mr. Martinez' doctors;

- Evaluate whether to hire its own expert;
- Have the defense expert examine Dr. Crown's testing and data;
- Attempt to conduct a defense neuropsychological evaluation;
- Depose Dr. Crown;
- Depose witnesses from Mr. Martinez' employer;
- Depose other witnesses regarding Mr. Martinez' alleged deficits;
- File discovery motions;
- Depose Dr. Kelly again as to her updated expert report; and
- File *Daubert* motions.

**Doc. 597 at 9.** As explained in detail by Defendant, Defendant would not only have to depose Dr. Crown, Dr. Kelly, and Mr. Martinez' medical providers, but would have to conduct discovery on Mr. Martinez' employers to determine his ability to perform his job, and conduct other discovery related to potential lost income damages. The Court does not believe this could be accomplished by trial. *See, e.g., Rodgers*, 2016 WL 7888048, at *3 (disallowing new expert opinions because, "[i]t would require re-opening all of the matters described ... to afford Defendants an opportunity to consider and respond to the information in the Declarations" and "would result in substantial cost and delay to the Defendants and would derail the efficient resolution" of the case). Moreover, the Court would be forced to extend numerous deadlines, including the discovery deadline, discovery motion deadline, expert disclosure deadline, and *Daubert* motion deadline. The Court finds that prejudice cannot be cured because it would necessarily delay trial. The Court is not inclined to delay trial further because (1) this is almost the oldest case on the Court's docket, aside from water rights cases and (2) Mr. Martinez could have obtained a traumatic brain injury evaluation much earlier. *See Harris*, 997 F.3d at 1113. Therefore, this factor weighs against Plaintiffs.

As to the third factor, the Court finds that admitting the expert testimony would substantially disrupt trial and require both deadlines and the trial to be continued. This a complex case and the Court expected discovery to be completed well before trial. Admitting Dr. Crown as an expert would likely necessitate a broad reopening of discovery, not only as to the traumatic

6

brain injury, but on lost income damages and Mr. Martinez' ability to work.   Defendant would need to depose multiple people as explained above.  The Court would have to allow Defendant the opportunity to seek out a rebuttal expert.  Finally, the parties would likely file multiple *Daubert* motions, although the dispositive motions deadline has passed.  In sum, reopening discovery and dispositive motion practice would result in considerable cost and delay. Given the case's complexity, the Court has set specific case deadlines.  **Doc. 596.**  The Court would be forced to vacate those deadlines, the pretrial conference, and trial.   Therefore, this factor substantially weighs against Mr. Martinez.

As to the fourth factor, the Court finds that the delay was not the product of inadvertence, negligence, or mistake. Although there is no evidence of bad faith, the Court finds that the delay was willful or that Mr. Martinez is culpable.  Mr. Martinez was aware during the pendency of discovery that he believed his headaches were caused by the accident. He stated as much in his July 2018 disclosures and in his November 2018 deposition.  Nevertheless, Mr. Martinez did not seek out an evaluation during the pendency of discovery.

In February 2019, Plaintiffs' own expert, Dr. Kelly, expressly noted that he should seek out a traumatic brain injury evaluation. Dr. Kelly is a certified life planner. *See* **Doc. 597 at 4.**  In her report, Dr. Kelly noted that Mr. Martinez had daily headaches throughout the day since the crash, accompanied by nausea, vomiting, and sensitivity to noise.  **Doc. 597-4 at 5.** Mr. Martinez stated that with ibuprofen he is able to work through the day. ***Id.* at 6.**

At the time the February 2019 report was produced, Mr. Martinez had not seen a neurologist and had no neuropsychological evaluation or MRI. ***Id.***

Mr. Martinez' job includes heavy lifting of railroad tracks up to 150 pounds.  He works as foreman with no restrictions. He works 8 days in a row for ten hours per day, followed by six days

off.  *Id.* **at 7.**  Dr. Kelly found that he should be further evaluated by a neurologist.  She concluded that there were findings suggestive of possible traumatic brain injury and that it should be investigated further with neuropsychological testing and an MRI.  *Id.* **at 10.**

In sum, Dr. Kelly's report noted that (1) he had daily headaches stemming from the crash; (2) he performed a very heavy physical job and "is able to work through the day"; and (3) he should be further evaluated for traumatic brain injury.  *Id.* **at 5-6.**

Nevertheless, that evaluation was not obtained until three years later.  The Court finds that this rises to the level of willfulness or culpability.  *See, e.g, Sonrisa Holding, LLC v. Circle K Stores, Inc.*, 835 F. App'x 334, 344 (10th Cir. 2020) ("While the court was unwilling to go so far as to say Plaintiffs acted in bad faith, the court concluded that, "at a minimum," Plaintiffs' actions rose "to the level of willfulness" or "an extreme recklessness." The court held, *at best*, this factor was neutral to both parties. In our view, the district court gave Plaintiffs the benefit of the doubt, as, again, Plaintiffs waited till the final day of discovery to disclose new damages that they knew or should have known about three and a half years prior. In any event, we will not disturb the court's finding.").  Therefore, this factor weighs against Plaintiffs.

In sum, all four factors weigh against Plaintiffs, and in viewing the totality of the circumstances, the Court concludes that Plaintiffs have not shown that the scheduling order violation was substantially justified or harmless.

Mr. Martinez asserts that he could not obtain a neuropsychological evaluation prior to January 2022 because of the pandemic.  However, the accident occurred in 2016 and Mr. Martinez attributed the headaches to his crash during the pendency of discovery, as explained above. Moreover, he was expressly advised by Dr. Kelly to obtain a traumatic brain injury evaluation in February 2019, well before the pandemic.

Mr. Martinez asserts that he could not obtain a traumatic brain injury evaluation until 2022 because of his job situation or lack of funds. He asserts that his job required him to move to different states. Defendant suggests that this argument is not persuasive, as presumably Plaintiffs' counsel has been fronting litigation costs such as expert fees. The record is not clear on this, although the Court notes that Plaintiffs' or their counsel have likely expended enormous resources on this case, including obtaining expert witnesses. Although the Court is sympathetic to the difficulties in obtaining medical care, Mr. Martinez has been working and has had many years to obtain his evaluation.

Plaintiffs summarily argue that due process *requires* that the Court allow the admission of evidence of this traumatic brain injury. Plaintiffs have not cited to any law stating that due process requires the Court to admit an expert when it finds that a three-year delay in producing the expert disclosure was not substantially justified or harmless.

Plaintiffs suggest a lesser sanction is available and appropriate. Trial is set in three months. This is a complex case in which the Court has set specific deadlines. The Court would have to reopen discovery and allow Defendant to obtain a deposition of Dr. Crown and other witnesses. Defendant would have to obtain a rebuttal expert, and then the parties would have to go through Daubert motions, which would take a month to fully brief. If the Court were to allow this expert, it would be forced to move the trial again. However, the Court is not inclined to continue trial again,[1] as explained above. This case has been pending since 2017 and the expert discovery deadline passed three years ago. As explained above, Plaintiff Martinez had ample time to obtain an expert opinion on his head injury.

---

[1] The Court previously moved trial from May to July to accommodate a criminal trial, which the Court is required to give priority. *See* Doc. 591; Fed. R. Crim. P. 50 ("Scheduling preference must be given to criminal proceedings as far as practicable."); *see also* 18 U.S.C. § 3164(a) (court must give priority to certain criminal cases).

## III.   *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, **873 F.3d 1191, 1205 (10th Cir. 2017) is not on point.**

Plaintiffs suggest it would be error for the Court to exclude Dr. Crown from trial, citing *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1205 (10th Cir. 2017). In that case, the Tenth Circuit held that "district courts should consider the efficacy of lesser sanctions, where the exclusion of evidence has the necessary force and effect of a dismissal." *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1205 (10th Cir. 2017).

*HCG Platinum* held that before imposing dismissal as a sanction, a district court should consider the following factors:

> "(1) the degree of actual prejudice to the [other party]; (2) the amount of interference with the judicial process; ... (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions."

*Id.*, *citing The Procter & Gamble Co. v. Haugen*, 427 F.3d 727, 738 (10th Cir. 2005).  That case described dismissal as an extreme sanction and a last resort. *Id.*

Here, the exclusion of Dr. Crown from testifying does not have the force and effect of a dismissal, therefore *HCG Platinum* is not on point.  As Plaintiffs admit, Dr. Crown only opines on one portion of damages, and Mr. Martinez is seeking other damages.  Moreover, this case has been extensively and capably litigated, and Plaintiffs' have likely expended enormous resources to bring this case to trial. It is unlikely that Plaintiff Felipe Martinez has no way to prove any damages at trial without Dr. Crown, who was retained on the eve of trial.

Alternatively, the *HCG Platinum* factors have largely been addressed in this opinion.  As explained above, (1) Defendant would be prejudiced; (2) the delay caused by a trial continuance would highly interfere with the judicial process; (3) Mr. Martinez was highly culpable; and (4) lesser sanctions are not available.  In addition, the Court finds that Plaintiffs were well aware that

10

evidence may be excluded if they did not comply with the Court's scheduling deadlines. *See* Fed. R. Civ. P. 37(b)(2)(A)(ii) (court may prohibit party violating scheduling order from introducing matters in evidence).

## CONCLUSION

For the reasons stated above, Defendant's motion to strike Plaintiffs' expert Dr. Barry Crown is well-taken. Mr. Martinez has not shown that the disclosure of the expert written opinion three years late is substantially justified or harmless. The Court also denies Plaintiffs' motion to extend deadlines to submit expert reports. The Court declines to consider Defendant's request for costs and fees for these motions, as this argument was not fully briefed.

**IT IS THEREFORE ORDERED** that Defendant's Motion Strike Plaintiffs' Expert Dr. Barry M. Crown **(Doc. 597)** is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Extend Deadlines for Submitting Expert Reports Related to Plaintiff Felipe Martinez's Damages **(Doc. 598)** is **DENIED.**

**IT IS SO ORDERED.**

_____
**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**