IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

---

IRMA MARTINEZ, FELIPE MARTINEZ,
LARRY MUNN, and
LEE HUNT, *as personal representative
of the estate of Abel Portillo*, *deceased*,

      Plaintiffs,

vs.                                                                              No. 1:17-cv-00922-KWR-JFR

CONTINENTAL TIRE THE AMERICAS,
LLC, *An Ohio Limited Liability Company*

      Defendant.

## ORDER GRANTING MOTIONS TO SEAL PORTIONS OF TRIAL TRANSCRIPT

**THIS MATTER** comes before the Court on Defendant's Motion to Seal Portions of the Trial Transcripts for July 18 and July 19, 2022 (**Doc. 718**) and Defendant's Motion to Seal Portions of the Trial Transcripts for July 27 and July 28, 2022 (**Doc. 735**). Having reviewed the evidence, testimony, and arguments of counsel, the Court finds that Defendant's motions are **WELL-TAKEN** and therefore are **GRANTED**.

The Court held a two-week bench trial. Defendant moves the Court to seal and redact limited portions of transcripts of that trial containing trade secrets or other confidential business information. Judge Robbenhaar previously issued two orders recognizing the confidentiality of certain deposition testimony as trade secrets or otherwise confidential business information. *See* **Docs. 420 and 512**. The Court concludes that Defendant's proposed redactions are well taken, as they contain trade secrets or other confidential business information. Moreover, Defendant's interest in maintaining the confidentiality of trade secrets heavily outweighs the public's interest

in reviewing testimony regarding trade secrets in the trial transcripts. Finally, the Court finds Defendant's proposed redactions are narrowly tailored.

Federal courts recognize a common-law right of access to judicial records. *Callahan v. Unified Gov't of Wyandotte Cty. Kansas City, Kan.*, No. CIV.A. 11-2621-KHV, 2013 WL 3287060, at *1 (D. Kan. June 28, 2013) (citing *Helm v. Kan.,* 656 F.3d 1277, 1292 (10th Cir.2011); *Mann v. Boatright,* 477 F.3d 1140, 1149 (10th Cir.2007). This right derives from the public's interest in understanding disputes that are presented to a public forum for resolution and is intended to ensure that courts operate fairly and that judges are honest. *Crystal Grower's Corp. v. Dobbins,* 616 F.2d 458, 461 (10th Cir. 1980).

> People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing. The public has a fundamental interest in understanding the disputes presented to and decided by the courts, so as to assure that they are run fairly and that judges act honestly.

*Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 509 (1984)). The public's right of access, however, is not absolute. *Helm,* 656 F.3d at 1292. The Court, therefore, has discretion to seal documents if competing interests outweigh the public's right of access. *Id.*; *United States v. Hickey,* 767 F.2d 705, 708 (10th Cir. 1985). In exercising its discretion, the Court weighs the public's interests, which it presumes are paramount, against those advanced by the parties. *Helm,* 656 F.3d at 1292; *Dobbins,* 616 F.2d at 461.

The party seeking to deny access must shoulder the burden to establish that a sufficiently significant interest "heavily outweighs the public interest in access." *Mann*, 477 F.3d at 1149 (quoting *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)). And, "any denial of public access to the record must be '*narrowly tailored* to serve the interest' being protected by sealing or restricting access to the records." *Walker*, 761 F. App'x at 835 (emphasis in original) (quoting *Press-Enter. Co. v. Superior Court of Cal.*, 478 U.S. 1, 12–13 (1986)).

"Privacy and preservation of trade secrets are among the interests which have been found, under certain circumstances, to overcome the presumption of openness." *Health Grades, Inc. v. MDx Med., Inc.*, No. 11-CV-00520-RM-BNB, 2014 WL 12741069, at *1–2 (D. Colo. Oct. 6, 2014), *citing Huddleson*, 270 F.R.D. at 637; *Nixon v. Warner Commc'ns*, 98 S. Ct. 589, 598 (1978) ("access has been denied where court files might have become a vehicle for improper purposes" such as "sources of business information that might harm a litigant's competitive standing"). Trade secrets may be protected from disclosure to competitors, even during a trial. This includes redacting trial transcripts. *In re Iowa Freedom of Info. Council*, 724 F.2d 658, 664 (8th Cir. 1983) (denying petition to vacate order sealing portions of transcript upon finding that transcript contained trade secrets); *Stamicarbon, N.V. v. Am. Cyanamid Co.*, 506 F.2d 532, 539-40 (2d Cir. 1974) (noting that trial court had authority to restrict access to judicial proceedings when testimony revealing trade secrets is received); *Riel v. Ayers*, No. CIV. S-01-0507-LKK/KJM, 2010 WL 3835798, *4 (E.D. Cal. Sept. 30, 2010) ("[P]rivileged information is an adequate factual basis for denying public access."); *Standard & Poor's Corp. v. Commodity Exch., Inc.*, 541 F. Supp. 1273, 1277-78 (S.D. N.Y. 1982) (denying motion to vacate order sealing portions of trial in which testimony disclosed trade secrets).

Defendant also has an interest in maintaining the confidentiality of business information that might harm its competitive standing if revealed to competitors. *See Woven Elecs. Corp. v. Advance Group, Inc.*, No. 89–1580, 1991 WL 54118, at *6 (4th Cir. Apr. 15, 1991) (ruling that the public may be denied access to judicial records if they contain "business information that might harm a litigant's competitive standing"); *East West, LLC v. Rahman*, No. 1:11cv1380 (JCC/TCB), 2012 WL 3843657, * (E.D. Va. Sept. 4, 2012) (granting motion to seal expert reports containing "confidential business information and other trade secret protected information," including

3

"sensitive financial data ... the disclosure of which would be highly likely to cause significant harm to the business competitive position of both parties").

Plaintiffs assert that a matter is a trade secret if (1) Defendant derives economic value from the information in the testimony at issue not being known by others who can obtain economic value from this information; (2) that reasonable efforts are taken to keep the information in the testimony a secret; and (3) that keeping this information secret will not tend to conceal fraud or otherwise work injustice. *Pincheira v. Allstate Ins. Co.*, 2008-NMSC-049, ¶¶ 15, 31, 144 N.M. 601, 604, 190 P.3d 322, 325. Assuming this test applies here, the Court finds that Defendant has satisfied it. As explained below, the Court finds that Defendant derives economic value from the confidentiality of the testimony at issue, and the disclosure of testimony regarding trade secrets to competitors would irreparably harm Defendant. Moreover, the Court finds that Defendant took reasonable efforts to keep the testimony secret from competitors, and keeping the information secret does not conceal fraud or otherwise work an injustice. Defendant established these in its briefing, and its unopposed affidavit and declarations. *See* **Doc. 102-1**, V. Hildebrand Aff.; Doc. 454-1, H. Morgenstern Dec.; Doc. 404-13, Supp. Dec. H. Morgenstern; Doc. 494-15, Dec. M. Spence. Plaintiffs did not rebut this evidence by citation to their own evidence.

Plaintiffs assert that this was a public trial, or the record has already otherwise been disclosed. Defendant's actions, including monitoring "the presence of observers in the courtroom" and moving the Court to seal trade secret information after trial, "were adequate to maintain secrecy of the constants under the facts of the case." *Gates Rubber co. v. Bando Chem Indus.*, 9 F.3d 823, 849 (10th Cir. 1993). Even if the trial was publicly observed, Defendant's counsel monitored the presence of persons in the courtroom during trial to ensure that no one with the ability to make commercial use of Defendant's trade secrets was present. **Doc. 730, Ex. 1, at ¶ 7-**

**9**. (Declaration of Brett Henry).  Based on the declaration and the Court's observations at trial, the Court finds that Defendant took reasonable steps to ensure that trade secrets were not disclosed to competitors.  Plaintiffs assert that Defendant's privacy right is diminished because the trade secrets were disclosed in open court. There is no evidence that Defendant's trade secrets were disclosed to competitors during the trial.  Rather, the only evidence in the record is that *no competitor* observed the trial. *See* **Doc. 730, Ex. 1**.

At issue is the public's interest in viewing trial transcripts which contain trade secrets.  The trial was not sealed, and the public had the opportunity to view the trial in its entirety.  The Court presumes that the public has a strong interest in viewing testimony upon which the Court will rely upon in reaching its decision in this case.  The Court will rely upon the trial testimony Defendant seeks to seal in reaching its decision in this case.

However, as explained in detail below, the Court finds that Defendant's interest in maintaining the confidentiality of its trade secrets or confidential business information heavily outweighs the public's interest in viewing the transcript of the testimony. Moreover, the Court finds that disclosure of the trade secrets would result in irreparable harm to Defendant. **Doc. 102-1**, V. Hildebrand Aff. at ¶¶ 23, 32-39. Defendant has filed three other declarations regarding the confidentiality of testimony regarding trade secrets. *See* **Docs. 494-13, 494-14, and 494-15**; *Uniroyal Goodrich Tire Co v. Hudson*, 873 F. Supp. 1037, 1044-45, 1048-49 (E.D. Mich. 1994) (entering order protecting company's adjustment data, manufacturing specifications, plant specifications, road test data… and mold drawings, noting that the threat "of this data reaching the tire company's competitors is substantial and, if realized, would cause irreparable harm… in the highly competitive tire manufacturing industry.").

Moreover, the Court has reviewed each of Defendant's requested redactions. The Court finds that Defendant's requested redactions are narrowly tailored to further its interests in maintaining trade secrets. Defendant does not seek the sealing of entire pages of testimony, but has tailored its line-specific requested redaction to trade secret or confidential information. Plaintiff cites to *United States v. Walker*, 761 F. App'x 822 (10th Cir. 2019) and *United States v. Pickard,* 733 F.3d 1297 (10th Cir. 2013). In those cases, the district courts had sealed entire transcripts. Here, Defendant has only designated redactions of specific lines relating to trade secrets or proprietary information it has a strong interest in maintaining confidentiality. Defendant's proposed redactions are narrowly tailored to only seal testimony revealing trade secrets or other confidential business information which, if revealed, would irreparably harm Defendant's competitiveness. This case involved nine days of testimony. The transcripts of the trial total approximately 1,872 pages, and the parties also submitted many pages of deposition testimony for the Court to review in chambers.[1] Out of the approximate 1,872 pages of transcript, Defendant proposed redacting limited portions of the transcript. Considering the trial testimony, deposition testimony, and other evidence presented to the Court, Defendant's requested redactions constitute a very small portion of the entire record before the Court. Therefore, the Court finds that Defendant's proposed redactions are narrowly tailored and appropriately balance Defendant's interest in maintaining confidentiality of proprietary information and the public's interest in the testimony.

Defendant asserts that the trial testimony it seeks to seal falls into the following categories: (1) tire specifications and measurement methodology; (2) manufacturing and quality assurance information; (3) production and adjustment data; and (4) testing protocols and results. Judge

---

[1] Some of the recorded depositions were played during trial, while others were submitted for the Court to review in chambers.

Robbenhaar issued two prior orders in this case recognizing that certain information in some of these categories may be trade secrets. *See, e.g.,* **Docs**. **420**, **512**. The Court agrees with that reasoning, and for the reasons stated in those orders, finds that testimony falling in those categories may be trade secrets meriting confidentiality.

Plaintiffs object to certain proposed redactions, which the Court addresses below. To the extent Plaintiffs have not objected to certain lines, the Court has reviewed the proposed redaction and concludes, like the parties, that it contains trade secrets warranting redaction.

**A.   Tire Specifications and Measurement Methodology.[2]**

Plaintiffs object to sealing the following lines:

> Pages 18: 7-9, 21:2-4, 162:12-22; 166:17-167:18, 170:3-11; 17:22-171:3; 265:11-15.; Page 23:2-7, 118:17-21, 116:8-14, 162:12-22, 163:24-164:1, 270:7-9; Pages 23:8-11, 162:12-22, 166:17-167:1, 169:4-8; 170:3-11; 17:22-171:3, 268:9-12; Pages 187:1-9; 191:7-13; 21:5-8; 23:12-18; 267:20-25; 118:17-21; 164:2-3; Pages 1494:10-13; 1505:6-8; 1508:24-1509:2; 1545:6-19; 1504:6-26; 1505:14-22; 1545:12-19; 1731:9-12; 1777:9-21; 1502:18-19; 1484:18-19, 1695:22-15; 1506:21-25; 1507:23-1508:8; 1508:14-16; 1590:5-1590; 1591:11-14, 19-25; 1592:3-7; 1603:16-1604:1;1605:12-17; 1606:22-25; 1621:14-19;1621:25-1621:1;1622:5-16; 1775:18-21

**Docs. 720, 750**. The Court has reviewed each disputed line of testimony, and concludes that each line contains trade secrets, or alternatively confidential business information, and the disclosure of this testimony to competitors would cause irreparable harm to Defendant.

---

[2] Defendant seeks to seal the following lines: Trial transcript of July 18 at Page 18, Lines 7-9; Page 21, Lines 2-8; Page 23, Lines 2-18; Page 118, Lines 17-21; Page 161, Lines 8-14; Page 162, Lines 12-22; Page 163, Line 24 to Page 164, Line 3; Page 166, Line17 to Page 167, Line 18; Page 169, Lines 4-8; Page 170, Lines 3-11; Page 170, Line 22 to Page 171, Line 3; Page 187, Lines 1-9; Page 191, Lines 7-13; Page 265, Lines 11-15; Page 267, Lines 20-25; Page 268, Lines 9-12; Page 270, Lines 7-9; Page 273, Lines 15-17; Page 275, Lines 2-9; and Page 276, Lines 9-13. Trial transcript of July 19 at Page 498, Lines 20-24.
Trial transcript of July 27 at Page 1484, Lines 18-19; Page 1494, Lines 10-13; Page 1502. Lines 18-19; Page 1504, Lines 6-16; Page 1504, Lines 19-25; Page 1505, Lines 6-8; Page 1505, Lines 14-22; Page 1506, Lines 23-25; Page 1507, Line 23 to Page 1508, Line 8; Page 1508, Lines 14-16; Page 1508, Line 24 to Page 1509, Line 2; Page 1545, Lines 6-19; Page 1590, Lines 5-12; Page 1591, Lines 11-14; Page 1591, Lines 19-25; Page 1592, Lines 3-7; Page 1603, Line 16 to Page 1604, Line 1; Page 1605, Lines 12-17; Page 1606, Lines 22-25; Page 1621, Lines 14-19; Page 1621, Line 25 to Page 1622, Line 1; and Page 1622, Line 5 to Page 1622, Line 18. This section also addresses the trial transcript of July 28 at Page 1695, Lines 22-23; Page 1731, Lines 9-12; Page 1775, Lines 18-20; and Page 1777, Lines 9-21.

The Court finds that testimony regarding tire specifications and Defendant's methodologies for ensuring its tires meet those specifications are trade secrets warranting confidentiality. *See* Doc. 102-1 (Hildebrand Aff at ¶¶ 31-33). As stated by Mr. Hildebrand, public disclosure of this information would allow another tire "manufacturer to gain a significant competitive advantage over CTA because it would allow a competitor to recreate significant aspects of the performance of various tire components and designs without investing any time or incurring any expenses in the development cycle." *Id.* at ¶ 33.

Moreover, Defendant's methodologies for measuring tires and their components against these tire specifications is also a trade secret. *Id.* at ¶ 33, 34; Doc. 494-15, Declaration of Mr. Spence, at ¶¶ 9-10. The Court has already sealed such information in prior orders, Docs. 420, 431, and finds that those reasons apply to the trial testimony.

Plaintiffs assert that Defendant's specifications can be ascertained by any competitor who buys one of Defendant's tires. But Defendant has shown that it seeks to protect its specifications and tolerances, which can only be ascertained through its documents or testimony. Doc. 102-1, V. Hildebrand Aff. at ¶¶ 31, 33.

The Court finds that the specific testimony identified by Defendant in this section constitutes trade secrets or confidential business information and should be sealed.

**B.    Manufacturing and Quality Assurance Information.**[3]

---

[3] Defendant seeks to seal the following lines: trial transcript of July 18 at Page 10, Lines 20-25; Page 124, Lines 16-19; Page 125, Lines 5-8; Page 125, Lines 22-24; Page 134, Lines 6-8; Page 134, Lines 18-24; Page 135, Lines 12-25; Page 196, Lines 1- 7; Page 198, Line 23 to Page 199, Line 1; Page 199, Lines 9-13; Page 277, Lines 7-18; and Page 277, Line 25 to Page 278, Line 11.
Trial transcript of July 19 at Page 368, Line 15 to Page 369, Line 2 and 395, Lines 20-22.
Trial transcript of July 27 at Page 1580, Line 22 to Page 1581, Line 3; Page 1586, Lines 13-20; Page 1587, Line 6 to Page 1588, Line 8; Page 1589, Lines 9-13; Page 1589, Lines 18-23; Page 1590, Lines 5-12; Page 1591, Lines 11-14; Page 1591, Lines 19-25; Page 1592, Lines 3-7; Page 1594, Lines 10-17; Page 1594, Lines 21-23; Page 1595, Lines 3-10; Page 1603, Line 16 to Page 1604, Line 1; Page 1605, Lines 12-17; Page 1606, Lines 22-25; Page 1610, Lines 7-17; Page 1610, Line 25 to Page 1611, Line 1; Page 1612, Lines 4-6; Page 1612, Lines 18-20; Page 1613, Lines 3-18; Page 1614, Lines 3-16; Page 1615, Lines 7-10; Page 1621, Lines 14-19; Page 1621, Line 25 to Page 1622, Line

Defendant asserts that information regarding its manufacturing and quality control processes constitute trade secrets. Judge Robbenhaar, in considering whether such testimony in this case constituted trade secrets, reasoned as follows:

> Mr. Spence's declaration in support of applying confidentiality to such testimony explains that each manufacturer develops its own process, *i.e.*, its own systems, procedures, and equipment, for manufacturing tires because the tire industry has no single standard method for doing so. Doc. 494-15 ¶ 7. CTA's quality assurance program is, therefore, a vital part of CTA's proprietary manufacturing process, *id.* ¶ 8, and its quality assurance systems are fundamental to its ability to produce high quality products. *Id.* ¶ 9. Rather than relying on a single stage of quality assurance, CTA maintains quality assurance standards and procedures at every step of manufacturing. *Id.* The quality assurance program is comprised of multiple types of documents that provide the standards, the procedures for testing those standards, and the actions to be taken when those standards are not met. *Id.* ¶ 10. The quality programs and its supporting documents are unique to CTA and were developed based on decades of experience in the tire manufacturing industry. *Id.* ¶¶ 9-10.

**Doc. 512 at 16-17**. The Court adopts the reasoning of that order, and concludes that testimony about manufacturing and quality assurance information constitutes trade secrets.

Defendant asserts that the trial testimony regarding proprietary manufacturing and quality assurance information falls into five categories. First, parts of the trial transcript discuss quality assurance standards and tolerances for both green and final products. This information is not publicly available to competitors. Second, the trial testimony discuses Defendant's quality assurance program. This program is unique to Defendant, and disclosure would lead to irreparable harm to Defendant. Doc. 494-15, Dec. M. Spence at ¶ 9. Third, the trial transcripts discuss Defendant's confidential submission of materials to Ford, including materials about the manufacturing process, including equipment capability studies and production capacity

---

1; Page 1622, Line 5 to Page 1622, Line 18; Page 1622, Line 21 to Page 1623, Line 1; Page 1623, Lines 7-12; Page 1627, Line 13 to Page 1628, Line 12; Page 1628, Line 19 to Page 1629, Line 8; Page 1629, Lines 16-25; Page 1636, Lines 1-6; and Page 1641, Lines 9-12.
Trial transcript of July 28 at Page 1823, Lines 12-18; Page 1824, Lines 10-25; Page 1825, Lines 6-8; Page 1825, Lines 13-14; Page 1826, Lines 3-6; Page 1826, Lines 12-21; Page 1826, Line 24 to Page 1827, Line 7; and Page 1827, Lines 17-23.

confirmation. *Id.* at ¶ 11. Ford keeps this information confidential, as it "recognizes the harm a tire manufacturer would suffer if this information fell into the hands of competitors." *Id.* at ¶ 11. Fourth, portions of the trial transcript discuss the training of and processes for employees in the final finish area. The training materials and processes are an important part of its quality assurance program. *Id.* at ¶ 10. This is proprietary information, and its disclosure would harm Defendant. Finally, the transcripts address Defendant's incentive programs for its employees at the Mt. Vernon plant. Its compensation programs are an important competitive advantage and are confidential. *Id.* at ¶ 11.

Plaintiffs object to sealing the following testimony:

Pages 10: 20-25, 124:16-19, 125:5-8, 125:22-24, 134:6-8, 134:18-24, 135:12-25; 196:1-7; 198: 23-199:1, 199:2-13, 395:20-22; 277:7-18; 277:25-278:11, 368:15-369:2; 1610:7-17; 1610:25-1611:1; 1612:4-6; 1612:18-20; 1613:3-18; 1823:12-18; 1824:10-25; 1825:6-8; 1825:13-14; 1826:3-6; 1615:7-10; 1641:9-12; 1614:3-16; 1591:11-14; 1591:19-25; 1592:3-7; 1603:16-1604:1; 1605:12-17; 1606:22-25; 1621:14-19; 1621:25-1622:1; 1622:5-8; 1622:21-1623:1; 1627:13-1628:12;1628:19-1629:8;1629:16-1636:6; 1594:10-17; 1594:21-23; 1595:3-10; 1587:6-1588:8.   1580:22-1581:3; 1586:30-20; 1589:9-13; 1589:18-23; 1590:5-12.

**Docs. 720, 750**. The Court has reviewed each disputed line of testimony, and concludes that each line contains trade secrets, or alternatively confidential business information, and the disclosure of this testimony to competitors would cause irreparable harm to Defendant, as explained above and in the Court's prior orders.

Therefore, the Court will seal the testimony in this section which Defendant identified in its motions.

**C.   Production and Adjustment data.**[4]

---

[4] Defendant seeks to seal the following lines: Trial transcript of July 18 at Page 19, Lines 1-4; Page 19, Lines 10-16; Page 177, Line 21 to Page 178, Line 1; Page 253, Line 19 to Page 254, Line 8; Page 254, Line 22 to Page 255, Line 1; Page 255, Lines 7-10; Page 256, Lines 7-12; and Page 256, Line 24 to Page 257, Line 9.
Trial transcript of July 27 at Page 1500, Line 13; Page 1508, Lines 21-22; Page 1508, Line 24 to Page 1509, Line 2; Page 1521, Lines 22-23; Page 1522, Lines 5-10; Page 1522, Line 13 to Page 1523, Line 3; Page 1523, Lines 9-14; Page 1539, Lines 2-4; Page 1541, Lines 18-21; Page 1542, Lines 9-12; Page 1542, Lines 18-22; Page 1558, Lines

Defendant moves to seal certain testimony regarding its production and adjustment warranty data, which it asserts provides propriety information about Defendant's products, the demand for those products, and the performance of those products in the marketplace. The Court agrees, and concludes that such data constitutes trade secrets, or is otherwise confidential, and its disclosure would result in irreparable harm to Defendant. Judge Robbenhaar previously found adjustment and production data to be confidential:

> An adjustment is a business transaction in which CTA reimburses a dealer for tires consumers have returned as part of a warranty claim. *See* Doc. 494-13 at 2 ¶ 7 (Morgenstern Supp. Decl.). CTA states that it has proprietary systems in place wherein it records information about the tires returned for warranty, which are the subject of many areas of disputed confidentiality. *See* Doc. 454-1 at 8 ¶ 18 (Morgenstern Decl.). A majority of Mr. Morgenstern's testimony that CTA now designates as confidential concerns adjustment data, as well as a portion of Mr. Hildebrand's testimony. *See* Doc. 494 at 11 n. 10. Now, to defend the confidentiality of that testimony, Mr. Morgenstern's supplemental declaration explains how CTA uses the adjustment data in its proprietary system for a number of important business purposes. He explains that CTA uses the data to better understand the performance of its products in the market. *See* Doc. 494-13 at 4 ¶ 11 (Morgenstern Supp. Decl.). At other times, CTA utilizes the information to identify opportunities to improve certain products or specific features of certain products. *Id.* at ¶ 12. In both cases, CTA developed procedures, protocols, and specialized reports to capture and analyze this data to meet CTA's specific business needs. *Id.* at ¶¶ 11, 12. In this way, CTA maintains that the protocols and procedures used to create such reports, the details about the data contained in the reports, as well as any decisions based upon those reports are as important as the data in the reports themselves. *Id.*
>
> …
>
> Mr. Morgenstern explains that CTA created a methodology for developing and analyzing its adjustment data utilizing condition codes to describe and categorize the conditions found in tires returned for adjustment. *See* Doc. 494-13 at 3 ¶ 8. CTA employs unique ways to analyze the adjustment data based upon those condition codes, which then allows CTA to better understand the performance of its products and certain market conditions. *Id.* Mr. Morgenstern also explains that condition codes exist in a constant state of evolution, allowing CTA to focus on a variety of issues over the course of time. *Id.* He further maintains that the disclosure of these

---

14-15; Page 1638, Lines 4-6; Page 1638, Lines 12-19; Page 1647, Line 24 to Page 1648, Line 2; Page 1650, Line 2-14; and Page 1651, Line 22 to Page 1652, Line 2. Trial transcript of July 28 at Page 1858, Lines 16-17; Page 1859, Lines 2-11; and Page 1861, Lines 9-18.

> unique conditions would provide a competitor with insight to the system CTA uses to review its data, the level of detail of that review, and the complaints on which CTA was focusing at any one time in history. *Id.*
> 
> …
> 
> Therefore, to release testimony that witnesses gave regarding these codes, and adjustment warranty data, would threaten any competitive advantage those systems, and their development in general, have created for CTA. *Id.* ¶¶ 9-10; *see also* Doc. 102-1 at 15 ¶ 37 (Hildebrand Aff.) ("If a competitor were to have access to this information, that competitor could change its distribution and warranty practices in an effort to reduce CTA's competitive advantage. CTA's competitors do not publicize their tire return and other adjustment data because of its competitive value.").

**Doc. 512 at 13-15**; *see also* **Doc. 512 at 17-18**. The Court agrees with Judge Robbenhaar's reasoning, and finds it applies to the trial testimony Defendant designated as confidential in its motions. It is clear that releasing Defendant's production and adjustment data would provide a competitive advantage to its competitors. **Doc. 102-1**, V. Hildebrand Aff. at ¶ 37. Defendant clearly has a strong interest in the confidentiality of this proprietary information, which heavily outweighs the public interest in it.

Plaintiff objects to sealing the following testimony:

Pages 19:1-4, 253:19-254:8; 256:24-257:9; 19:10-16; 177:21-178:1, 253:19-254:8, 254:22-255:1, 255:7-10; 256:7-12; 1500:13; 1508:21-22; 1509:1-2; 1539:2-4; 1521:22-23; 1522:5-10; 1522:13-1523:3; 1523:9-14; 1541:18-21; 1558:14-15; 1638: 4-6; 1638:12-19; 1647:24-1648:2; 1650:2-14; 1651:22-1652:2; 1858:16-17; 1859:2-11; 1861:9-18

The Court has reviewed each disputed line of testimony, and concludes that each line contains trade secrets, or alternatively confidential business information, and the disclosure of this testimony to competitors would cause irreparable harm to Defendant.

Therefore, the Court will seal the trial testimony regarding production and adjustment data Defendant identified in its motions.

**D.     Testing Protocols and Results.**[5]

---

[5] Defendant seeks to seal the following lines: the trial transcript of July 18 at Page 260, Lines 6-10 and Page 260, Lines 21-23.

Defendant moves to seal trial testimony regarding details of its design and development testing process, which it asserts provides propriety information otherwise unavailable to competitors. The Court agrees, and will seal the designated lines of testimony, which the Court finds to be narrowly tailored to protecting Defendant's interest in proprietary testing protocols.

Defendant makes "a substantial commitment of time and personnel and an enormous financial and technological investment" to develop, test, and implement new products. Doc. 102-1, V. Hildebrand Aff. at ¶24. Because of this investment, Defendant takes steps to keep its proprietary test methods, as well as the results, confidential. *Id.* at ¶¶ 27-30. "It is impossible for another company to learn CTA's trade secret test protocols or test procedures without actually obtaining a copy of CTA's trade secret testing documents." *Id.* at 35. Another tire company cannot duplicate Defendant's test methods. *Id.* at ¶31. Defendant would be irreparably harmed if a competitor could duplicate its research and development methods without incurring the cost Defendant incurred in developing those methods. *Id.* at ¶ 35. Similarly, Ford requires tire manufacturers to test prototype tires using testing protocols that Ford developed. Ford requires Defendant to keep the requirements, including testing protocols, confidential. Doc. 494-14, Second Supp. Dec. V. Hildebrand at ¶ 10. Judge Robbenhaar previously sealed deposition testimony regarding information in this category. Defendant established the unique, proprietary nature of its test methods. Doc. 102-1, V. Hildebrand Aff. at ¶¶ 24, 35. The Court finds the reasoning in his orders persuasive, and applies it to this trial testimony.

Plaintiff objects to sealing the following testimony:

---

Trial transcript of July 27 at Page 1512, Lines 14-23; Page 1513, Lines 9-17; Page 1513, Line 23 to Page 1514, Line 12; Page 1514, Lines 18-19; Page 1514, Lines 23-25; Page 1515, Lines 3-6; Page 1515, Line 24 to Page 1516, Line 20; Page 1516, Line 25 to Page 1517, Line 2; Page 1517, Lines 6-7; Page 1518, Line 21 to Page 1519, Line 10; Page 1520, Line 5; Page 1520, Line 8; and Page 1551, Lines 6-9.

13

Pages 260:6-10, 260:21-23; 1512:14-23; 1513:9-17; 1513:23-25; 1514:1-12; 1514:18-19; 1514:23-25; 1515:3-6; 1515:24-1516:20; 1516:25-1517:2; 1517:6-7; 1518:21-25; 1519:1-10; 1520:5-8; 1551:6-9

**Docs. 720, 750**. The Court has reviewed each disputed line of testimony, and concludes that each line contains trade secrets, or alternatively confidential business information, and the disclosure of this testimony to competitors would cause irreparable harm to Defendant.

Therefore, the Court will seal the trial testimony regarding testing protocol and results which Defendant identified in its motions (**Docs. 718** and **735**).

## CONCLUSION

Defendant has shown that it has a compelling interest in maintaining the confidentiality of certain trade secrets. Moreover, the Court finds that Defendant's interest in maintaining the confidentiality of its trade secrets heavily outweighs the public's interest in accessing transcripts of trial testimony about trade secrets. Finally, the redactions are narrowly tailored, and the Court will issue a redacted transcript available to the public.

Therefore, the Court will seal the transcripts for July 18, 19, 27, and 28, and file redacted versions of those transcripts, as described below.

**IT IS THEREFORE ORDERED** that Defendant's Motions to Seal (**Docs. 718** and **735**) are **GRANTED.**

**IT IS FURTHER ORDERED** that the transcripts for July 18, 19, 27, and 28 shall be **SEALED.**

**IT IS FURTHER ORDERED** that Defendant shall submit within **fourteen (14) days** of the entry of this order redacted versions of the transcripts for July 18, 19, 27, and 28, redacting only those lines previously identified in its motions (**Docs. 718 and 735**), which the Court will file for public viewing.

**IT IS SO ORDERED.**

_____
**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**

15